JS 44 (Rev 3/99)  **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

## I. (a) PLAINTIFFS
Jeffrey A Kraller & Alan Pollenz

**DEFENDANTS**
Allied Pilots Association

(b) County of Residence of First Listed Plaintiff: Tarrant County
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U S PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) Attorney's (Firm Name, Address, and Telephone Number)
Stephen Gardner
Law Office of Stephen Gardner, PC
6060 N Central Expy, Ste 560
Dallas, Texas 75206
214-800-2830

Attorneys (If Known)

APR 14 2003

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U S Government Plaintiff
- [x] 3 Federal Question (U S Government Not a Party)
- [ ] 2 U.S Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury — Product Liability | | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | [x] 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | Habeas Corpus: ☐ 530 General | | ☐ 870 Taxes (U S Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

29 USC § 185 & 29 USC § 412 Suit alleges defendant violated the Bill of Rights for Union Members.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R C.P. 23

CHECK YES only if demanded in complaint.
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE: none
DOCKET NUMBER: _____

DATE: April 14, 2003

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 14 2003
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| JEFFREY A. KRALLER and ALAN POLLENZ, § § § Plaintiffs, § § v. § § ALLIED PILOTS ASSOCIATION, a Labor Organization, § § § Defendant. § | Civil Action No.<br><br>3 03CV- 761P |

### VERIFIED COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiffs Jeffrey J. Kraller and Alan Pollenz bring this complaint against Defendant Allied Pilots Association ("APA" or "Association") and show the Court the following:

### Introduction

1. This complaint arises under the due process provisions of the "Bill of Rights for Union Members," 29 U.S.C. § 411(a)(5), and section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Plaintiffs seek injunctive and other appropriate relief to remedy unlawful discipline imposed by the defendant union upon the plaintiffs.

### Jurisdiction and Venue

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1337(a); the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185; and the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 412.

3. Venue is appropriate in this district, as the district in which the defendant Allied Pilots Association is headquartered and in which the alleged violations occurred, under 28 U.S.C. § 1391(b); 29 U.S.C. § 412.

**VERIFIED COMPLAINT**, page 1

## Parties

4. Plaintiff JEFFREY A. KRALLER is a captain employed by American Airlines, a member in good standing of the defendant Allied Pilots Association and a resident of Denton County, Texas.

5. Plaintiff ALAN POLLENZ is a captain employed by American Airlines, a member in good standing of the defendant Allied Pilots Association. He resides in Raleigh, North Carolina.

6. Defendant ALLIED PILOTS ASSOCIATION ("the APA") is a labor organization within the meaning of 29 U.S.C. § 402(i), and the designated bargaining representative for the pilots employed by American Airlines, headquartered in the city of Fort Worth, Texas.

## Conditions Precedent

7. All conditions precedent to the filing of this action have been met or have occurred.

## Facts

8. In early August, 2002, plaintiffs organized a recall campaign against John Darrah as the president of the APA, in accordance with the membership's right to recall the president under Article VI of the constitution. See Exhibit "A," attached hereto and incorporated herein by reference.

9. The APA and its members have in recent years come to rely heavily on the internet and electronic mail communications.

10. Plaintiffs conceived their recall campaign as internet-based, and they set up a web site, www.recalldarrah.org, to disseminate information to the membership.

11. In furtherance of their campaign, plaintiffs amassed an online data base of the electronic mail addresses of individual members.

12. The membership list for the entire membership based at each of the carrier's domiciles, including addresses, telephone numbers, and electronic addresses of members, has always been accessible to the entire membership at that domicile.

13. Until 1999, the membership list, including addresses, telephone numbers, and electronic addresses of members, was published in book form for each domicile and distributed to the membership.

14. The membership list is currently maintained as an online data base.

15. The membership data base is made accessible to the membership by means of log-in pass codes issued by the APA to all members in good standing.

16. Upon collecting members' electronic mail addresses from the APA's online data base, in connection with their recall campaign, plaintiffs discovered that the data base had been programmed to limit any one member to collecting data on a maximum of 25 members' names in any 24-hour period.

17. In response to plaintiffs' requests to fellow members for assistance in amassing members' electronic mail addresses for their recall campaign, some members helped in collecting electronic mail addresses, and others who did not have the time to spend themselves gave plaintiffs their log-in pass codes, with permission to use the codes.

18. One of the log-in pass codes that plaintiffs received belonged to a union committee chair. This code was not restricted to the collection of 25 names in any given 24-hour period.

19. Plaintiff Pollenz developed a program that automated the electronic mail address "look-up" process.

20. Plaintiffs discovered that the union committee chair's pass code was accessing electronic addresses that had been marked "private" by members who did not wish to share them. Upon making this discovery, plaintiffs promptly purged all electronic addresses marked private from the data that they had collected. Plaintiffs did not use the private electronic addresses at any

time. At the time that they used it, plaintiffs did not know that the committee chair's pass code accessed electronic addresses marked private.

21. On October 10, 2002, defendant summarily, without notice or hearing, barred plaintiffs' IP addresses from all access to the Association's web site.

22. On October 29 and 31, 2002, defendant removed the access bars on plaintiffs Kraller's and Pollenz' IP addresses, respectively.

23. Under cover letter dated November 1, 2002, plaintiffs were charged by the defendant with "misappropriating money or property of the Association," and of an "act contrary to the best interests of the APA as an institution or its membership as a whole," by making unauthorized use of a committee chair's log-in pass code to access private information and "to download volumes of member information" beyond the limits programmed by the Association's web master. See Exhibit "B," attached hereto and incorporated herein by reference.

24. On November 7, 2002, defendant adopted a resolution that admitted that "the Association has no explicit written policy on the safeguarding of sensitive internal information," and set forth a new "confidential information policy." See Exhibit "C," attached hereto and incorporated herein by reference. On the same date, defendant amended the constitution to broaden the scope of disciplinary actions that may be taken against members. See Exhibit "D," attached hereto and incorporated herein by reference.

25. By notice dated November 21, 2002, defendant set a hearing on the charges filed against the plaintiffs for December 5, 2002. See Exhibit "E," attached hereto and incorporated herein by reference.

26. On the evening of December 3, 2002, defendant's representative, First Officer John Bury, agreed with plaintiffs' representative, Captain Robert Held, to a resolution of the internal charges against plaintiffs, including an agreement to postpone the December 5, 2002 hearing until mid-January, to allow the parties sufficient time to draft a mutually satisfactory joint statement to the members about the incident and its resolution.

**VERIFIED COMPLAINT**, page 4

27. Plaintiffs and their hearing representative, Robert Held, canceled their plans to attend the hearing, on the basis of the December 3, 2002 agreement.

28. In mid-afternoon on December 4, 2002, Bury informed plaintiffs that hearing chair Gary Weller had refused to postpone the hearing scheduled to begin the next morning.

29. On the evening of December 4, 2002, a winter blizzard hit the East Coast, causing the closing of many airports and the cancellation of many flights out of the Raleigh, North Carolina airport. Plaintiff Pollenz was unable to make the necessary arrangements to leave on December 4, 2002, within mere hours after being informed that the hearing would proceed despite the settlement. He was prevented by the weather from departing the next morning, and therefore was unable to attend the December 5th hearing.

30. Defendant's short notice on December 4th of its intent to proceed with the December 5th hearing date despite the settlement also prevented plaintiffs' hearing representative, Robert Held, who resides in the Chicago area, from attending the December 5, 2002 hearing.

31. After Weller refused to postpone the hearing, Bury announced at the hearing that defendant was repudiating its settlement agreement.

32. Plaintiff Kraller, who resides in the Fort Worth area, attended the hearing and was compelled to represent himself. He had not prepared for the hearing, in reliance upon the parties' settlement.

33. At the hearing, defendant made a hearsay accusation, unsupported by witness testimony, that plaintiffs' use of the committee chair's log-in pass code was not authorized by the committee chair.

34. Plaintiff Kraller testified at the hearing that plaintiffs used the committee chair's pass code on the basis of their good faith belief that their use of it had been personally authorized.

35. Plaintiff Kraller testified at the hearing, without contradiction, that plaintiffs did not know, when they used the contested pass code, that it would download data marked "pri-

**VERIFIED COMPLAINT**, page 5

vate." He also testified, without contradiction, that plaintiffs never at any time used any data that had been marked "private," and had purged all private data from their data base.

36. On January 4, 2003, the hearing chair issued a written decision finding both plaintiffs guilty, as charged, of misappropriating union data, and he castigated plaintiffs and attacked their personal integrity and honor. He ordered plaintiffs' access to the APA web site suspended for a period of one year, effectively sabotaging their recall campaign against Darrah. See Exhibit "F," attached hereto and incorporated herein by reference.

37. The discipline issued by defendant against the plaintiffs was not a disciplinary action authorized by the APA constitution at the time of the events that were the subject of the internal charges against plaintiffs. After defendant filed its internal charges against plaintiffs, however, the Association amended its constitution to grant its appeal board broader disciplinary powers.

38. Defendant's decision denied plaintiff Pollenz his right to appeal, based on his failure to appear at the December 5th hearing.

39. Plaintiffs conditionally filed a timely joint appeal from defendant's disciplinary decision, in accordance with Article VII.E of the constitution, asking defendant to confirm in writing that it would waive any procedural objections to Pollenz' right to appeal, and that defendant would assume the fees and expenses of the arbitrator. Defendant never provided the requested confirmation. Nor did defendant comply with any of several other conditions that plaintiffs had requested to assure a fair and impartial appeal proceeding.

40. The parties have been unable to settle the dispute. On April 10, 2003, following plaintiffs' notice to the arbitration agency that the arbitration was proceeding on terms that plaintiffs had not authorized, the agency withdrew the proceeding from the arbitration docket. Defendant, by letter of April 10, 2003, informed plaintiffs that the discipline will be imposed effective April 15, 2003. See Exhibit "G," attached hereto and incorporated by reference.

**VERIFIED COMPLAINT**, page 6

41. As members in good standing, plaintiffs are entitled to all of the rights, privileges, and benefits of membership, including the rights of free speech and participation in the affairs of the Union. The discipline to be imposed on April 15, 2003 will irreparably injure plaintiffs' free speech and participation rights by depriving them of the right to communicate electronically on the Association web site with one another and their elected officers, and will make it impossible, as a practical matter, for them to continue their recall campaign.

42. By denying plaintiff Pollenz' right of appeal and refusing to bear the arbitrator's fees and expenses, defendant has made further appeal futile and attached conditions to appeal that make further exercise of appellate rights onerous and burdensome.

43. The resort to formal arbitration proceedings that would be required to exercise further internal union appeal procedures would entail substantially more time than the four months allowed by the Act for the exhaustion of internal union remedies. See 29 U.S.C. § 411(a)(4).

## Count I

### Deprivations of Free Speech and Association Rights Without Due Process

44. The disciplinary action that defendant is about to impose upon plaintiffs will violate plaintiffs' due process rights, as follows:

   a. By disciplining plaintiffs for circumventing defendant's program limiting the number of "look-ups" on the membership data base to 25 in a 24-hour period, defendant is disciplining them for conduct that did not violate any union rule.

   b. By disciplining plaintiffs for accidentally accessing electronic addresses marked "private," defendant is disciplining them for conduct that did not violate any union rule in existence at the time they engaged in the conduct being disciplined.

   c. The evidence was uncontradicted that plaintiffs' accessing of electronic addresses marked "private" was accidental and unintentional, and that they immediately destroyed all data so marked, without using it, upon discovering that they had accessed it. There is

**VERIFIED COMPLAINT**, page 7

no basis in the evidence for the appeal board's finding that plaintiffs intentionally and knowingly "misappropriated" such union property.

d.   Defendant waived any property interest in barring its own members from accessing its membership list, by historically making the data freely available to all members, first in printed form and then in electronic form, to this date.

e.   The particular discipline to be imposed -- a one-year bar from all access to the Association's web site -- will deprive plaintiffs of their free speech and association rights as members to communicate electronically with other members and with their elected officers, on grounds not prohibited by any union rule.

f.   The particular discipline to be imposed, a one-year bar from all access to the Association's web site, was not a form of union discipline that was authorized by the Association's constitution at the time of the claimed misconduct, but was added to the constitutionally allowed forms of discipline *after* the filing of internal charges against the plaintiffs and will be imposed on plaintiffs *ex post facto*.

g.   The disciplinary action to be imposed is based upon an adverse finding against plaintiffs, resting solely on hearsay evidence, that their use of the committee chair's log-in code was not personally authorized by the committee chair, without having afforded plaintiffs their due process right to confront and cross examine that witness.

h.   The disciplinary action to be imposed is based on inadequate advance notice that the hearing would proceed as originally scheduled, despite the settlement agreement that had been reached, depriving plaintiffs of their right under the Association's constitution to representation at the hearing, and entirely depriving plaintiff Pollenz of his right to be present at the hearing.

i.   Defendant denied plaintiff Pollenz his right to an internal union appeal from the disciplinary decision, thereby failing to afford minimum due process to him.

**VERIFIED COMPLAINT**, page 8

j.  Defendant refused to assume the fees and costs of the neutral arbitrator that was the only appeal option offered to plaintiff Kraller, depriving him of a reasonable internal union appeal.

45. On October 19, 2002, and for a period of approximately two weeks thereafter, defendant summarily suspended plaintiffs' right as members to communicate electronically on the Association's official web site with fellow members and their officers, without notice or hearing, in violation of their due process rights under 29 U.S.C. § 101(a)(5).

46. By the actions set forth above, defendant has violated plaintiffs' right under LMRDA, section 101(a)(5), 29 U.S.C. § 411(a)(5), to due process before being subjected to internal union disciplinary action depriving them of valuable membership rights.

## Count II

## Breaches of Union Constitution

47. The Association's constitution constitutes a contract between the Association and its local unions, which is enforceable by plaintiffs, as members, under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

48. At the time that plaintiffs engaged in the conduct for which they were disciplined, Article VII.A of the Association's constitution provided only for fines, suspension, or expulsion from membership as disciplinary actions against members.

49. By imposing a bar against any and all access to the Association's official web site for a period of one year, as a formal disciplinary action against plaintiffs, the defendant disciplined plaintiffs in violation of the constitution's disciplinary provisions.

50. By revoking plaintiff Pollenz' right of appeal for failing to appear at the hearing, notwithstanding his showing of good cause for such failure, defendant violated his right of appeal under Article VII.B.3 of its constitution.

51. By proceeding with the hearing despite plaintiff Kraller's showing of good cause for the failure of his designated hearing representative to appear at the hearing, defendant vio-

lated his right to representation at the hearing by another member in good standing under Article VII.B.3 of the constitution.

## Relief Requested

Plaintiffs respectfully request the Court to order the following relief:

1. Temporarily restrain, and preliminarily and permanently enjoin, defendant from barring plaintiffs' access to the Association's official web site, as threatened;

2. Award plaintiffs their compensatory and any appropriate punitive damages;

3. Award plaintiffs their reasonable attorney fees and costs; and

4. Order such other relief as the Court may deem appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Respectfully submitted,

Barbara Harvey
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone: (313) 963-3570
Facsimile: (313) 963-3572
Email: barbaraharvey@comcast.net

STEPHEN GARDNER
Texas State Bar No. 07660600
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:   214/800-2830
Telecopier:   214/800-2834
Email: steve@consumerhelper.com

Attorneys for Plaintiff,
by:

_____
STEPHEN GARDNER

**VERIFIED COMPLAINT**, page 10

## Verification

I declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that the foregoing factual allegations are within my personal knowledge and are true and correct.

Singed April 14, 2003.

_____
Jeffrey A. Kraller