**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JEFFREY A. KRALLER and<br>ALAN POLLENZ, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| ALLIED PILOTS ASSOCIATION, a | § | |
| Labor Organization, | § | **3 03CV - 761P** |
| | § | |
| Defendant. | § | |
| | § | |

CLERK, U.S. DISTRICT COURT

By_____

Deputy

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

Barbara Harvey
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone: (313) 963-3570
Facsimile: (313) 963-3572
Email: barbaraharvey@comcast.net

STEPHEN GARDNER
Texas State Bar No. 07660600
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:    214/800-2830
Telecopier:   214/800-2834
Email: steve@consumerhelper.com

Attorneys for Plaintiffs

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

I.     Introduction ............................................................................................................. 1

II.     Statement of Facts  ............................................................................................... 2

III.    ARGUMENT ........................................................................................................ 5

    A. The Standards for Issuance of Injunctive Relief ................................................ 5

    B. Plaintiffs Are Likely to Prevail on the Merits of Their Claims ........................... 5

        1. Plaintiffs Received No Notice That the Conduct for Which They Will Be Disciplined Was Prohibited ....................................................................................... 8

        2. As a Direct Interference With Members' Right to Associate Electronically With One Another, Defendant's Numerical Quota Was Not a Lawful Basis for Disciplinary Action  10

        3. The Appeal Board's Primary Findings Were Not Supported by Evidence ................... 11

        4. Defendant Failed to Provide Sufficient Notice of the Hearing ...................................... 12

        5. Defendant Denied Plaintiffs a Mandatory Internal Union Appeal ................................. 13

        6. The Discipline Violates the Association's Constitution ................................................ 13

    B. The Threatened Discipline Will Cause Irreparable Injuries  ................................. 15

    C. The Balance of Hardships Favors Plaintiffs ....................................................... 15

    D. The Public Interest Strongly Favors the Requested Relief ................................. 15

Conclusion ........................................................................................................................ 15

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page i**

# TABLE OF AUTHORITIES

## Cases

*American Federation of Musicians v. Wittstein*, 379 U.S. 171 (1964) ........................................... 5

*Auto Wax Co., Inc. v. Marchese*, 2002 WL 2030871 (N.D. Tex.,2002) ....................................... 5

*Black v. Ryder/P\*I\*E\* Nationwide*, 970 F.2d 1461 (6th Cir. 1992) .............................................. 6

*Breininger v. Sheet Metal Workers International Association, Local Union No. 6,*
    493 U.S. 67 (1989) ................................................................................................................8, 13

*Falcone v. Dantinne*, 420 F.2d 1157 (3d Cir. 1969) .......................................................6, 12

*Finnegan v. Leu*, 456 U.S. 431 (1982) ......................................................................................... 5

*Goodman v. Laborers' International Union of North America*, 742 F.2d 780 (3d Cir.1984) ...........8

*Hall v. Cole*, 412 U.S. 1 (1973) ................................................................................................6, 15

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, ___ F.3d ___,
    2003 WL 1405726 (5th Cir. 2003) ..................................................................................5

*International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and*
    *Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233 (1971) ..................................................7, 11

*Jacques v. Local 1418, International Longshoremen's Association,*
    246 F. Supp. 857 (E.D. La.1965), *aff'd*, 404 F.2d 703 (5th Cir.1969) ......................... 8, 14

*Local Union No. 1056, United Broth. of Carpenters and Joiners of America v. the Greater*
    *Fox River Valley District Council*, 817 F. Supp. 1434 (E.D. Wis. 1993) ......................... 7

*Navarro v. Gannon*, 385 F.2d 512 (2d Cir. 1967) .......................................................................6

*Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886 (4th Cir.),
    *cert. denied*, 372 U.S. 976 (1963) ....................................................................................... 7

*Perry v. International Longshoremen's Association, AFL-CIO*, 638 F. Supp. 1441, 1448
    (S.D.N.Y. 1986) ................................................................................................................. 8

*Rodonich v. House Wreckers Union, Local 95*, 624 F. Supp. 678 (S.D.N.Y. 1985) .......................13

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,*
    605 F.2d 1228 (2d Cir. 1979), *cert. denied*, 446 U.S. 919 (1980)......................................8

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION,** page ii

*Schermerhorn v. Local 100, Transport Workers Union of America, AFL-CIO,*
      91 F.3d 316 (2d Cir. 1996) ...................................................................................7

*Schermerhorn v. Local 100, Transport Workers Union of America,* 1995 WL 677092
      (S.D.N.Y.,1995), *aff'd,* 91 F.3d 316 (2d Cir. 1996)........................................... 7

*Semancik v. United Mine Workers of America Dist. No. 5,*
      466 F.2d 144 (3d Cir. 1972) ......................................................................... 6, 8, 10

*Shea v. McCarthy,* 953 F.2d 29 (2d Cir. 1992) .............................................................13

*Sheet Metal Workers International Association v. Lynn,* 488 U.S. 347 (1989) ................................5

*Sugar Busters LLC v. Brennan,* 177 F.3d 258 (5th Cir.1999) ........................................ 5

*United Transportation Union v. Reed,* 109 S. Ct. 621 (1989)......................................... 6

*University of Texas v. Camenisch,* 451 U.S. 390 (1981)...................................................5

*Walgreen Co. v. Hood,* 275 F.3d 475 (5th Cir. 2001).....................................................5

*Waring v. International Longshoremen's Association, Local 1414,*
      653 F. Supp. 374 (S.D. Ga.,1986)...........................................................................6

*Wildberger v.. AFGE,* 86 F.3d 1188 (D.C.Cir.1996) ......................................................7

*Wooddell v. International Brotherhood of Electrical Workers, Local 71,* 502 U.S. 93 (1991) ........13

**Statutes**

LMRA, section 301, 29 U.S.C. § 185 ......................................................................... 1

LMRDA, section 101(a)(5), 29 U.S.C. § 411(a) (5) ......................................................passim

LMRDA, section 102, 29 U.S.C. § 412 .......................................................................15

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page iii

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEFFREY A. KRALLER** and **ALAN POLLENZ,** | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. |
| **ALLIED PILOTS ASSOCIATION**, a Labor Organization, | § § § | |
| Defendant. | § § | |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I. Introduction

Plaintiffs ask this Honorable Court to maintain the *status quo ante* pending resolution of their claims that discipline that the defendant Allied Pilots Association ("APA") intends to enforce against them beginning April 15, 2003 unlawfully violates their due process rights under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), section 101(a)(5), 29 U.S.C. § 101(a)(5), and the Association's constitution, in violation of the Labor-Management Relations Act ("LMRA"), section 301, 29 U.S.C. § 185. Unless temporarily restrained and preliminarily enjoined, defendant will, on April 15, 2003, terminate plaintiffs' access to official union electronic fora in which members communicate with each other and with their officers, without due process. The impact of the disciplinary action, significantly, will be to silence and sideline the known leaders of a campaign to recall the Association president from office.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page 1**

## II. Statement of Facts[1]

Plaintiffs are pilots and captains employed by American Airlines and members in good standing of the defendant, the APA. In August, 2002, they organized a recall campaign against APA president John Darrah, as their union constitution entitles them to do. They mounted their campaign electronically, with a web site, www.recalldarrah.org, and began amassing a data base of members' e mail addresses, to further their campaign.

Historically, Association membership data was always accessible to members. Until 1999, it was accessible in booklets that the Association mailed to members, and after that time, it has remained accessible to members as an electronic online data bank. The online membership data base, like other members-only areas of the Association's official web site, is accessed by member pass code.

However, plaintiffs discovered, when they began amassing their e mail data base, that the online membership data base had been programmed to limit members' access to 25 "look-ups" in any 24-hour period. They responded by appealing to their supporters for help in compiling an e mail data base for the recall campaign. Some supporters donated their time, by looking up e mail addresses with their own pass codes, and others donated their pass codes, for plaintiffs to utilize. One of the pass codes that was given to plaintiffs was not limited by the numerical limit on "look-ups." In using it, plaintiffs discovered that this pass code was downloading e mail addresses that members had flagged as "private." They promptly purged all such e mail addresses from their data base, did not retain such data, and never used any of it.

Upon discovering plaintiffs' "look-up" activity in support of their recall campaign, on October 10, 2002, defendant summarily blocked plaintiffs' access to all areas of the Association's official web site, including its members' forum and a forum for members to communicate with their officers, as well as access to online scheduling (bidding for trips), without notice or hearing. At the end of the month, defendant removed the block on plaintiffs'

---

[1] This statement is supported by the Verified Complaint and exhibits attached to it.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 2

access to the web site, and plaintiffs' access has remained restored, to date. On November 1, defendant charged plaintiffs with "misappropriating money or property of the Association," and of an "act contrary to the best interests of the APA as an institution or its membership as a whole," by making unauthorized use of a committee chair's log-in pass code to access private information and "to download volumes of member information" beyond the limits programmed by the Association's web master.

On November 7, 2002, defendant amended its constitution to broaden its appeal board's disciplinary powers beyond the penalties specified in the constitution: fines, suspension, and expulsion. On the same date, the Association adopted a resolution that admitted that "the Association has no explicit written policy on the safeguarding of sensitive internal information," and set forth a new broadly worded "confidential information policy" that presumably encompasses the downloading of member data marked as "private." On November 21, 2002, defendant sent plaintiffs notice that the charges against them would be heard on December 5, 2002.

On December 3, 2002, plaintiffs' designated hearing representative, Robert Held, reached an agreement with the Association's representative, secretary-treasurer John Bury, on terms to settle the internal union charges against the plaintiffs. They agreed, as well, to postpone the hearing to sometime in mid-January, to allow sufficient time to agree to the language of a joint statement to be issued to the members on the resolution of the dispute, or to recognize that no agreement could be reached. Despite the settlement agreement, Bury called the plaintiffs on mid-afternoon of December 4, 2002, to inform them that hearing officer Gary Weller had refused to postpone the hearing.

By then, however, neither Pollenz, who lives in Raleigh, North Carolina, nor Held, who lives in the Chicago area, was able to attend the December 5th hearing, to be held in Fort Worth. Pollenz was trapped in North Carolina by a severe blizzard that reached North Carolina on the evening of December 4th. Held, who had made other plans in reliance on the settlement, was

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page 3**

unable to rearrange his schedule on such short notice. Kraller, who lives in the area of the Association's headquarters, did manage to attend the hearing, but he had failed to prepare for it, in reliance on the settlement, and was denied representation by his chosen representative, Held. At the hearing, in light of Weller's refusal to postpone the proceeding, defendant repudiated its settlement and demanded to prosecute the charges.

At the hearing, defendant made a hearsay accusation, unsupported by witness testimony, that plaintiffs' use of the committee chair's log-in pass code was not authorized by the committee chair. Kraller testified that plaintiffs used the pass code believing in good faith that their use of it had been personally authorized. He also testified that plaintiffs did not know, when they used the contested pass code, that it would download data marked "private," and that they never at any time used any data that had been marked "private," and had promptly purged all private data from their data base. There was no contrary evidence on either of these factual issues.

The appeal board issued a decision on January 4, 2003, finding both plaintiffs guilty, as charged, of misappropriating union data. The decision castigated plaintiffs and attacked their personal integrity and honor. Plaintiffs' access to the APA web site was suspended for a period of one year, effectively sabotaging their recall campaign against Darrah.

The appeal board's personal attack appeared to be a gratuitous slam against the plaintiffs for having attempted a recall campaign against the president. To plaintiffs' knowledge, no union rule limited the number of "look-ups" in the online data base, notwithstanding the web master's programming of a numerical limit on such daily use. Their accessing of data marked as private was an inadvertent error, that they had corrected immediately upon discovering it, by purging the data without using it. Their use of the committee chair's pass code was authorized, to the best of their knowledge at the time, and Kraller's testimony to that effect was uncontradicted, except by Bury's hearsay accusation to the contrary. The board's penalty effectively crippled plaintiffs' recall campaign, which was conceived as an online endeavor.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 4

## III. ARGUMENT

### A. The Standards for Issuance of the Requested Injunctive Relief.

Four factors are to be considered in determining whether either a temporary restraining order or preliminary injunction should be issued:

> For the Court to enter a temporary restraining order or preliminary injunction, Plaintiff must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damages that the injunction may cause defendants; and (4) that the injunction will not disserve the public interest.

*Auto Wax Co., Inc. v. Marchese*, 2002 WL 2030871, at *1 (N.D. Tex.,2002), citing *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir.1999); see *University of Texas v. Camenisch*, 451 U.S. 390, 392 (1981); *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, ___ F.3d ___, 2003 WL 1405726, *9 (5th Cir. 2003); *Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001).

### B. Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

The Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401 *et seq.*, "was the product of congressional concern with widespread abuses of power by union leadership," *Finnegan v. Leu*, 456 U.S. 431, 435 (1982). Its purposes are "to shield the union membership from arbitrary, autocratic, and despotic control by union officers and leaders," *Sheet Metal Workers International Association v. Lynn*, 488 U.S. 347 (1989), and to assure the "full and active participation by the rank and file in the affairs of the union," *American Federation of Musicians v. Wittstein*, 379 U.S. 171, 182-83 (1964); *Finnegan v. Leu, supra*, 456 U.S. at 441.

The LMRDA's Title I "was adopted as an amendment on the Senate floor by 'legislators [who] feared that the bill did not go far enough because it did not provide general protection to union members who spoke out against the union leadership.'" *Sheet Metal Workers v. Lynn, supra*, 488 U.S. at 352. Entitled the "Union Members' Bill of Rights," Title I guarantees free

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 5

speech, equal voting rights, and procedural due process in union disciplinary proceedings, providing a framework for internal union government on a democratic model. See 29 U.S.C. §§ 411(a)(1) - (5). *Sheet Metal Workers International Association v. Lynn, supra; Hall v. Cole,* 412 U.S. 1, 8 (1973); *Navarro v. Gannon,* 385 F.2d 512, 518 (2d Cir. 1967) (Lumbard, C.J.), *cert. denied,* 390 U.S. 989 (1968); *Black v. Ryder/P\*I\*E\* Nationwide,* 970 F.2d 1461, 1466 (6th Cir. 1992) ("Congress passed Title I of the LMRDA in order to ensure truly democratic unions, in which policies were formulated and adopted after open debate and criticism."). The rights created in Title I were considered to be essential attributes of democracy within unions. *United Transportation Union v. Reed,* 109 S. Ct. 621, 625-26 (1989).

> The Congress by passing a 'Bill of Rights' for union members determined that the efficiency of a monolithic union under autocratic rule was gained at too great a price if it necessitated any sacrifice in the members' rights to determine the course of their organization. The balance was struck in favor of union democracy. Only a union responsive to the rights of all its members can achieve the ideals of responsibility, opportunity and self-determination that are recognized as fundamental values in the labor movement.

*Navarro v. Gannon, supra,* 385 F.2d at 518.

In conjunction with the high value placed by Congress on the free speech and association, equal voting, and procedural due process rights created by Title I, the Act expressly approves injunctive relief as "appropriate" for violations of Title I rights. See LMRDA, section 102, 29 U.S.C. § 412. *Semancik v. United Mine Workers of America Dist. No. 5,* 466 F.2d 144, 155 (3d Cir. 1972); *Waring v. International Longshoremen's Association, Local 1414,* 653 F.Supp. 374 (S.D. Ga.,1986).

Plaintiffs claim violations of their due process rights under LMRDA, section 101(a)(5) and the Association's constitution. Section 101(a)(5) protects members against the unjust exercise of union authority by barring disciplinary action that fails to provide certain procedural safeguards:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 6

any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

This provision does not invite judicial second-guessing about the *substantive* grounds for discipline, but rather empowers the courts to assure that disciplinary action meets minimal standards of fairness. *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman,* 401 U.S. 233 (1971)

"Discipline" under section 101(a)(5) refers to "punishment authorized by the union as a collective entity to enforce its rules. 'Discipline is the criminal law of union government.'" *Breininger v. Sheet Metal Workers International Association, Local Union No. 6,* 493 U.S. 67, 91 (1989). Union action is "discipline," subject to the requirements of section 101(a)(5), if it is any sort of official action taken against a member that is punitive in nature. *Schermerhorn v. Local 100, Transport Workers Union of America, AFL-CIO,* 91 F.3d 316, 326 (2d Cir. 1996) (*held*: reprimand constitutes such discipline); *accord, Local Union No. 1056, United Bhd. of Carpenters and Joiners of America v. Greater Fox River Valley Dist. Council,* 817 F.Supp. 1434, 1442 (E.D. Wis. 1993) (*held:* reprimand "formally expresses disapproval of a person's behavior and amounts to an instruction that the behavior not be repeated. That's discipline.")

A union disciplinary hearing is not required to provide the "full panoply of procedural safeguards" necessary in a criminal case, but what constitutes a "full and fair hearing" is determined by reference to traditional constitutional concepts of due process and the federal common law that has developed under the LMRDA. *Falcone v. Dantinne,* 420 F.2d 1157, 1165 (3d Cir. 1969); *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 904 (4th Cir.), *cert. denied,* 372 U.S. 976 (1963); *Schermerhorn v. Local 100, Transport Workers Union of America,* 1995 WL 677092, at *5 (S.D.N.Y.,1995), *aff'd,* 91 F.3d 316 (2d Cir. 1996).

The procedural rights under section 101(a)(5) include full notice and a reasonable opportunity to be heard, including the right to present evidence and the right to confront and cross- examine witnesses; an unbiased tribunal, *Wildberger v.. AFGE,* 86 F.3d 1188 (D.C.Cir.1996)*; Falcone v. Dantinne, supra; Schermerhorn, supra;* a transcript or other record

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 7

of the proceeding, *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228 (2d Cir. 1979), *cert. denied,* 446 U.S. 919 (1980); and "a reasonable time" in which to prepare a defense. *Breininger v. Sheet Metal Workers International Association, Local Union No. 6,* 493 U.S. 67, 92 (1989). A "subsequent internal union review," a post-hearing appellate proceeding, is an essential attribute of a "full and fair hearing." *Breininger, supra.* A union fails to provide a fair hearing if it fails to comply with the procedural requirements of the union's constitution. *Jacques v. Local 1418, International Longshoremen's Association,* 246 F. Supp. 857 (E.D. La.1965), *aff'd,* 404 F.2d 703 (5th Cir.1969). A hearing is not fair if the members of the tribunal prejudged the guilt of the accused, *Goodman v. Laborers' International Union of North America,* 742 F.2d 780 (3d Cir.1984); *Perry v. International Longshoremen's Association, AFL-CIO,* 638 F. Supp. 1441, 1448 (S.D.N.Y. 1986), or if the discipline was "merely a pretext for general political retaliation or retaliation for a member's exercise of protected Title I rights." *Perry, supra.*

1. Plaintiffs Received No Fair Notice That the Conduct for Which They Were Disciplined Was Prohibited

Implicit in the "fair hearing" requirement is that the union must give fair notice that the conduct for which a member is subjected to disciplinary proceedings is prohibited. The union must provide "reasonably ascertainable standards of conduct required of penal statutes." *Semancik v. United Mine Workers of America Dist. No. 5, supra,* 466 F.2d at 157:

> A fair hearing is not an adequate response to a charge which should never have been brought in the first place. Requiring unions to limit their prosecutions to constitutional provisions and by-laws which reasonably inform union members of the nature of the proscribed activity is a logical extension of the requirement of a full and fair hearing in accordance with due process.

*Id.*

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 8

Defendant failed to provide fair notice to the plaintiffs that the conduct, for which they are to be banned for a full year from all communications on the official web site, was prohibited. Except for the appearance of a numerical daily quota on "look-ups," discussed below, all the indications were *to the contrary:* Members historically had full, unlimited access to the membership data base; hard copies of the membership list, until recently, were distributed to the membership, including physical and e mail addresses and telephone numbers; currently, members all have access, through pass codes, to the online membership data base, also including physical and e mail addresses and telephone numbers.

The numerical daily quota on "look-ups" of members' e mail addresses was not formalized as a policy or rule. Rather, it appears to be nothing more than a program installed by an information technologist, perhaps at the request of a union representative, or perhaps not. Plaintiffs have no knowledge of how long the electronic quota has resided quietly in the data base. Plaintiffs had no reason to notice it, and failed to notice it, until they accessed the data base for a number of e mail addresses that exceeded the quota, in connection with their recall campaign. Perhaps the quota was installed in response to the plaintiffs' recall campaign. Members had no way to know of the quota until they attempted to exceed it, when it became operative as a "pop-up" screen.

Certainly, the operation of the electronic quota signified that some one having access to the programming of the official web site did not want members to look up a number of addresses exceeding the quota. The installation of the numerical quota might reasonably have signified a measure intended to prevent commercial appropriation of the data base. Members, however, were not thereby on notice of a new union rule terminating the members' own internal long-standing free and unlimited access to the membership data base.

In sum, members were never given notice that the numerical quota on "look-ups" was an official union rule, or even an official union decision. Members had no notice of the quota, in

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page 9**

any form, unless they attempted to access 26 e mail addresses within a 24-hour period.  The significance of the numerical quota was ambiguous and unexplained.

2. <u>As a Direct Interference With Members' Right to Associate Electronically With One Another, Defendant's Numerical Quota Was Not a Lawful Basis for Disciplinary Action.</u>

In *Hardeman, supra,* a member was lawfully punished by the union for physically attacking his business agent for failing to refer him to a job.  It was immaterial that the union had no written rule expressly forbidding physical attacks by angry members on their union representatives.

*Hardeman* confirmed that a union may reasonably presume that all members understand that such universally understood misconduct as a physical attack against a union representative is subject to disciplinary action, regardless of the existence of a specific union rule prohibiting such attacks.  But the rule is otherwise when the union disciplines a member for exercising free speech or association rights.  In such cases, the union is required to base any disciplinary action on a prior clear and unambiguous rule.  *Semancik v. United Mine Workers of America Dist. No. 5,* 466 F.2d 144, 153 (3d Cir. 1972).

The discipline to be imposed on the plaintiffs for exceeding the numerical quota directly interferes with members' free association with one another, by making it physically impossible for rank-and-file members to send, to a significant number of other members, electronic messages about matters of interest to the membership.  The defendant has, in effect, disciplined plaintiffs for attempting to seek membership support for their recall campaign from more than a relatively small segment of the membership:  the number that may be reached by looking up 25 e mail addresses per day, day after day, for such time that plaintiffs may continue to do so without incurring the political irrelevancy of their recall campaign. (The membership is large enough that it would take a single rank-and-file member nearly two years to amass a complete e mail list — which, by then, would be substantially out of date.)  Plaintiffs were disciplined because the size of the audience that they sought to reach was too large, in the view of the union leader that they seek to recall.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 10

Because defendant disciplined plaintiffs for attempting to associate electronically with a substantial number of their fellow members about a matter of vital interest to the membership, it was required to do so pursuant to an existing clear and unambiguous rule. Defendant, however, admitted, after charging plaintiffs with misconduct, that it had *no* rule at that time governing members' access to "sensitive internal information."[2]   Defendant has essentially admitted its violation of the principle enunciated by the Third Circuit, in *Semancik*.

3. The Appeal Board's Primary Factual Findings Were Not Supported by Evidence.

Without calling the witness with personal knowledge, defendant merely asserted at the hearing, and the Appeal Board found, on the basis of this assertion alone, that plaintiffs' use of the committee chair's pass code was not personally authorized by the committee chair. The disciplinary action that is about to be imposed upon plaintiffs thus rests in substantial measure on pure hearsay.

Additionally, the Appeal Board found that plaintiffs had knowingly and intentionally downloaded data marked as private, and were therefore guilty of "misappropriation" of union property. The Board made this finding without any evidentiary basis or even an assertion to rely upon, and in the face of uncontradicted testimony that such data was downloaded accidentally, without knowledge that the pass code accessed such data, and was then immediately purged, without being used..

Under *Hardeman, supra,* union disciplinary action is required to rest on at least *some* evidence. Defendant's mere hearsay assertion was not evidence, and the Board had no basis at all for its finding of intentionality. The Board's adverse findings on these central issues do not rest on evidence.

---

[2]   Plaintiffs here assume that the membership data base is such "sensitive private information." Since they were not disciplined for violating the policy that was adopted on November 7, 2002, after they were charged, the issue of whether that language was too vague to provide fair notice of the prohibited conduct is not before the Court.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 11

Plaintiffs, moreover, were entitled to confront and cross examine the witness having personal knowledge of whether he had authorized plaintiffs' use of his pass code. *Falcone v. Dantinne, supra; Schermerhorn, supra.* Defendant's denial of the right to confront and cross examine the only witness having personal knowledge denied plaintiffs one of the traditional hallmarks of a fair hearing.

4. Defendant Failed to Provide Sufficient Notice of the Hearing.

By refusing to grant a postponement of the December 5th hearing that the parties had agreed to on December 3rd, defendant's appeal board deprived plaintiffs of reasonable advance notice that the hearing would proceed, despite settlement of the dispute.   As a direct consequence, plaintiff Pollenz was unable to attend the hearing, and, while plaintiff Kraller did manage to attend, he was unable to prepare for it, and he was deprived of his right under the constitution to be represented at the hearing by his chosen hearing representative.

The parties reasonably relied on their December 3rd settlement of the dispute.  Kraller, who did manage to attend the hearing, reasonably failed to prepare for the hearing, in reliance on the settlement.  Pollenz, who would have been able to plan a departure from his home in Raleigh, North Carolina for Texas early on the 4th, perhaps escaping the blizzard, was informed of the hearing's reinstatement so late in the day on the 4th that he was unable to arrange his departure before the blizzard closed air travel from Raleigh that evening.  Plaintiffs' representative, Robert Held, who was required to travel from Chicago, was unable to change his plans on such short notice, since he, as the negotiator of the settlement, also reasonably relied on it.

By denying plaintiffs sufficient notice that the hearing would proceed, notwithstanding their settlement agreement, which called for its postponement to allow the parties sufficient time to follow through with the settlement terms, defendant effectively denied Pollenz' right to attend the hearing and defend himself, and both plaintiffs' right to be represented by their chosen representative.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page 12**

5. Defendant Denied Plaintiffs a Mandatory Internal Union Appeal

The right to an internal union appeal is one of the necessary components of due process required by section 101(a)(5). *Breininger, supra.* Defendant, however, deprived both plaintiffs of their internal appeal rights.

After providing insufficient notice that the hearing would proceed despite the settlement, defendant penalized Pollenz for failing to attend by revoking his right to an appeal. The Association's constitution denies appeal rights to members who fail to appear for a hearing. But this provision, if it is a lawful limitation, under section 101(a)(5), upon the right to an internal union appeal, cannot be a lawful limitation on appeal rights unless it assumes a *voluntary* failure to appear. Pollenz' failure to appear was involuntary.

Additionally, the Association effectively attached a threat of substantial monetary penalty to the exercise of appeal rights, against both plaintiffs, by refusing to agree to bear the arbitrator's fees and expenses. A right to appeal that subjects the member to the risk of significant monetary penalty for exercising his appeal rights is not a fair right to an internal union appeal. Plaintiffs are unaware of any authority that approves such an onerous and burdensome potential penalty on the right to use internal union appeals.

6. The Discipline Violates the Association's Constitution

A union constitution is a contract between a parent labor organization and its affiliated entities, in this case, the local domiciles. As such, the constitution is enforceable by the union's members, as third party beneficiaries. *Wooddell v. International Brotherhood of Electrical Workers*, 502 U.S. 93, 99-100 (1992); *Rodonich v. House Wreckers Union, Local 95*, 624 F. Supp. 678 (S.D.N.Y. 1985).

The constitutional violations committed in this case are actionable independently under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, as violations of the union constitution. Section 301 empowers the Court to issue injunctive relief for breaches of a union constitution. *Shea v. McCarthy*, 953 F.2d 29, 32-33 (2d Cir. 1992).

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** page 13

Additionally, the constitutional violations are significant as violations of plaintiffs' right under LMRDA, section 101(a)(5) to be disciplined in accordance with, and not in violation of the provisions of their union constitutions. *Jacques v. Local 1418, International Longshoremen's Association, supra,* 246 F. Supp. 857 (E.D. La.1965), *aff'd,* 404 F.2d 703 (5th Cir.1969).

The threatened discipline violates the following procedural provisions of the Association's constitution:

1. At the time plaintiffs engaged in the conduct for which they were disciplined, as well as when they were charged with and found guilty of misconduct, the constitution did not authorize imposition of the particular disciplinary action that the Appeal Board has ordered. The constitution authorized three disciplinary actions: fines, suspension, and expulsion. The Appeal Board exceeded its constitutional authority by imposing discipline outside the scope of the measures authorized by the constitution.

2. Defendant revoked Pollenz' constitutional appeal rights under article VII.B.3 for failing to appear at the hearing, although that failure was caused by a weather emergency beyond his control, and was involuntary.

3. Although defendant's formal written hearing notice gave the constitutionally required minimum 10 days notice of the hearing, plaintiffs reasonably relied upon their December 3rd settlement agreement with the defendant, including an agreement to postpone the hearing until mid-January, to permit sufficient time to draft a mutually agreeable joint statement. Defendant's notice to plaintiffs, in the middle of the afternoon of December 4th, that the December 5th hearing would be conducted, in violation of the agreed settlement terms, did not comply with the constitution's 10-day notice requirement. The insufficient notice was responsible for Pollenz' loss of his right to attend the hearing, and for Kraller's loss of his constitutional right to representation by his designated hearing representative.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page 14**

For all of the foregoing reasons, plaintiffs respectfully submit that they are likely to prevail on the merits of their procedural due process claims.

## C. Plaintiffs Are Suffering Irreparable Injury

Title I expressly recognizes violations of the rights guaranteed by that Title as irreparable injuries, for which the granting of injunctive relief is "appropriate." 29 U.S.C. § 412. In this case, plaintiffs face a one-year bar on their right to communicate with other members on the official Association online membership forum, as well as a forum for members to communicate with their elected officers. These injuries are irreparable, and of the type intended to be remedied by Title I. Injunctive relief is the most direct and meaningful remedy for a ban upon access to union member associational rights.

## D. The Balance of Hardships Favors Plaintiffs

Maintenance of the *status quo ante* imposes on the defendant no burden at all. Defendant has fully restored plaintiffs access to the official web site since the end of October, 2002. Plaintiffs have abided by the Association's position since then, although they disagree with it. The only parties at risk of suffering hardship are the plaintiffs, who risk losing their right to associate and communicate electronically with other members and their officers in the usual fora for such associations and communications, and their ability to maintain an effective recall campaign.

## E. The Public Interest Strongly Favors Issuance of the Requested Relief

Federal labor policy, as expressed in the LMRDA, strongly favors the preservation of the union members' "bill of rights" and democracy within unions. *Hall v. Cole,* 412 U.S. 1 (1973).

Conclusion

For all of the foregoing reasons, plaintiffs respectfully ask this Court to temporarily restrain and preliminarily enjoin defendant to maintain the *status quo ante* by refraining from implementing the unlawful disciplinary action threatened to be implemented effective April 15, 2003.

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, page 15**

Respectfully submitted,

Barbara Harvey                           STEPHEN GARDNER
Penobscot Building, Suite 3060           Texas State Bar No. 07660600
645 Griswold Street                      Law Office of Stephen Gardner, PC
Detroit, Michigan 48226                  6060 North Central Expressway, Suite 560
Telephone: (313) 963-3570                Dallas, Texas 75206
Facsimile: (313) 963-3572                Telephone:    214/800-2830
Email: barbaraharvey@comcast.net         Telecopier:   214/800-2834
                                         Email: steve@consumerhelper.com

                                         Attorneys for Plaintiff,
                                         by:

                                         _____
                                         STEPHEN GARDNER

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION,** page 16