

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JEFFREY A. KRALLER and ALAN POLLENZ § § § § Plaintiffs, § § ALLIED PILOTS ASSOCIATION, § § Defendant. § § § | Civil Action No: 3 03 CV-761 P |

### DEFENDANT ALLIED PILOTS' ASSOCIATION
### OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

THOMAS H. GEOGHEGAN *
Illinois Bar No. 3126689
Despres, Schwartz & Geoghegan
77 West Washington Street, Suite 711
Chicago, Illinois 60602-2803
(317) 372-2511
(317) 372-7391 FAX

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750
(214) 637-0730 FAX

* Application for Admission Pro Hac
Vice to be filed or currently pending

DATED: April 18, 2003

COUNSEL FOR DEFENDANT
ALLIED PILOTS ASSOCIATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................. 4

Introduction .......................................................... 4

Statement of Facts .................................................... 5

ARGUMENT ........................................................... 10

    Standard for Review ............................................. 10

    I.    Plaintiffs Had Fair Notice That it Is Punishable Conduct to Gain Entry under False Pretenses to the Union's Computer Database. ...................... 11

    II.   Defendant Did Provide Sufficient Advance Notice of the Hearing ........... 13

    III.  The Board's Factual Findings Were Amply Supported by the Evidence ...... 13

    IV.  Defendants Had Reasonable Notice of the APA Appeal Board Hearing ...... 14

    V.   Plaintiffs Were Not Denied a Mandatory Union Appeal ................... 15

    VI.  Plaintiffs Have Stated No Claims for Relief under Section 301 of the LMRDA  16

    VII. Plaintiffs Do Not Meet the Other Standards for Injunctive Relief ............ 16

    VIII. Plaintiffs Have Failed to Exhaust Their Internal Union Remedies ........... 17

Conclusion ........................................................... 18

## TABLE OF AUTHORITIES

**CASES**

Boilermakers v. Hardeman, 401 U.S. 203 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13

Harris County, Tex. v. CarMax Auto Superstores, Inc., 177 F.3d 306 (5th Cir. 1999) . . . . . . . . 11

O'Neill v. ALPA, 939 F.2d 1199 (5th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Semancik v. Mineworkers, 466 F.2d 144 (3rd Cir 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Evergreen Presbyterian Ministries Inc, et Al. V, David W Hood, Secretary Louisiana Department of Health, 235 F.3d 908 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992 (5th Cir. 1985) . . . . . . . . . . . . . . . 11

White v. Carlucci, 862 F.2d1209 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**
29 U.S.C. § 411 (a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 411 (a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 13, 16, 17

**MISCELLANEOUS**
APA Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Introduction

On April 14, 2003, this Court refused to grant plaintiffs' motion for a temporary restraining order and requested expedited briefing from the parties. Among many other reasons, this motion should be denied on at least two grounds : First, the pilots will lose on the merits, because they did receive a full and fair hearing, with specific notice of the charges, well in advance, pursuant to Section 101 (a)(5) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411 (a)(5). They had or can be imputed to have had fair notice that their use of a top officer's password without his permission in order to break into the union computer and download membership data is conduct subject to discipline. As stated in <u>Boilermakers v. Hardeman</u>, 401 U.S. 203, 244 (1971), a union "may discipline members for offenses not prescribed by written rules at all." "Hacking" into the union computer, as plaintiffs did, under false pretenses, to download confidential information is recognized in this country as serious misconduct. Second, the pilots have violated Section 101 (a)(4) of the LMRDA, 29 U.S.C. §411(a)(4) and the APA Constitution because they have failed to exhaust or even use their internal union remedies, under Article VII of the APA Constitution. (The relevant portion of the APA Constitution and By laws is attached to the plaintiffs' complaint.)

Under Article VII, Section E, plaintiffs could have appealed to a neutral arbitrator selected jointly by the parties from the American Arbitration Association. In fact, they <u>did</u> appeal and then withdrew it. The APA remedy hearing, by neutral outside arbitration, is a far better venue to hear this dispute than a busy federal court. (Most labor unions do not provide for such a neutral outside party to arbitrate an internal dispute.) The APA did advise plaintiffs that it will pay for the costs of the arbitration, so there is no financial "penalty" for use of this remedy. Indeed, plaintiffs may not effectively dispute that they were assured on this point orally, but

appear to complain that they never received additional and gratuitous "confirmation," presumably in writing, that the APA will comply with its own Constitution. But that is no basis for filing a legal action in this court. Plaintiffs are required to exhaust their internal union remedies both as it is required under Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411 (a)(4) and because the "contract," i.e., the APA Constitution, under which they also claim to sue, has a clause for binding outside neutral arbitration, which can be used here at no expense to plaintiffs. For these two reasons, and others set out below, the motion should be denied.

### Statement of Facts

The APA, like other unions, has a membership list, but it includes much more than the erstwhile, old fashioned, hard-copy membership lists of old: in the union computer, members also include their email addresses, cell phones, and other phone numbers that may be unlisted, and other private information. There is a special need to protect such a list from unauthorized use, not just from other members, but from third parties, such as bulk mailers, phone solicitors, etc. For that reason, the APA has a policy that limits each rank and file member who enters the non- public portion of the APA web site to looking up only twenty-five names for a 24 -hour period. Even then, the member does not have access to confidential information that a member has "tagged" as private and not to be disclosed to others.

While the APA Constitution and By Laws may not refer specifically to the misuse of union computer information, the APA Policy Manual, section 2.06, paragraph D, states as follows:

> "The database from which mailing list and telephone information is drawn will contain specific permission tags to identify information that they do not want made available to other members on domicile lists or Internet Services."

Section 2.06 Paragraph E of the manual further states:

"The database containing information for the entire membership is confidential and access to it must be carefully controlled. Release of names, phone numbers, address, email addresses and related data for APA's entire membership shall require written permission of all three National Officers and prior notification to the members."

Defendant APA has attached as Exhibit 1 hereto the relevant page of the APA Policy Manual (p. 15) and as Exhibit 2 has attached the entire and complete "APA Appeal Board Hearing, Bury v. Kraller and Pollenz," dated January 4, 2003, which includes the correspondence from Robert Held. Defendant has also attached to this memorandum the verification of John Bury, executed April 18, 2003. Defendant APA now sets forth the following additional facts: On October 9, 2002, Glenn Schafer, the APA Contract Compliance Committee Chairman, reported that someone had gotten his website password and made 2500 inquiries into the APA membership database. Schafer, as Contract Compliance Committee Chairman, is authorized to have unlimited access to the membership database, including confidential information. Rank and file members, as noted, can look up only 25 names for a 24-hour period, and only as to non-confidential information. Schafer said that he was changing his password, to prevent the unknown persons from further downloading.

After an investigation by APA, it was determined that Schafer's member ID was being used by the two plaintiffs, Kraller and Pollenz, i.e., that they were falsely identifying themselves as "Schafer" and had downloaded the data for 2500 members.

Kraller and Pollenz claim they were engaged in a campaign to have a recall election of the union president, John Darrah, and were trying to reach as many members as possible. Because the pilots believed it was too expensive to conduct a mailing, they decided to download the names from the Internet. But it was inconvenient to download only 25 names at a time. So Kraller sent an email message to his colleagues: "At 25 member look ups a day a person we

need more people." He received a response back from Jason Goldberg giving him a password that Goldberg said would give Kraller unlimited access to email addresses. Goldberg did not say from whom this password came, but wrote Kraller by email as follows:

> "This will give you unlimited access to the email addresses on the website. Regards, Jason."

When Kraller tried the password, he saw that he was using an APA committee chairman's password and that if he entered the database with Schafer's password he could get all the information he wanted. Kraller thanked Goldberg for giving him the use of the password. Although Kraller knew it was Schafer's password, he emailed Goldberg: "Thank you for the use of *your* password..." (emphasis supplied). He then asked Goldberg if he could give the password to Pollenz and to others. Jason Goldberg emailed back:

> "Disseminate as you see fit, Jason."

On December 5, 2002, Kraller testified at the APA Appeal Board hearing that he did not contact Schafer himself because he was of the opinion that "Schafer probably wants to stay at arms length on this so that... he has plausible deniability." Kraller also testified that he "took it on faith that Glenn Schafer knew about this." He said that he never considered contacting Schafer himself to ask for his permission to use the password.

At the hearing, Kraller also put in evidence an affidavit prepared for Goldberg, but which Goldberg had failed to sign. In the unsigned affidavit, Goldberg says that he received the password from Schafer and he admits he gave it to Kraller. However, he adds:

> "I conveyed no express or implied permission to use this password in violation of the APA Constitution and Bylaws or the APA Policy Manual. I had no specific knowledge of the extent to which Kraller intended to use this password."

When Appeal Board member Ward asked whether it ever occurred to Kraller to contact

Schafer, Kraller testified on December 5 as follows:

> "Yes sir, it did. And I went to the web page, and my determination, I said, you know, Glen Schafer Probably wants to stay at arms length on this so that, you know, if any of this stuff hits the fan, he has plausible deniability. So I should have, and that's right when I could have stopped the whole incident right there. And that's my mistake, but that's water under the bridge at this point."

On January 4, 2003, the Board issued its decision, which notes Kraller's defense that he and Pollenz did not take any confidential information but adds as follows:

> "Captain Kraller misses the point. Regardless of what information they did or did not download, they accessed the information under false pretenses. Regardless of whether Goldberg had Schafer's permission or not, both Kraller and Pollenz had an obligation to get Schafer's permission personally. No honorable person would use a third person's confidential password without permission. Despite Captain Kraller's denial, his conduct was deceptive...
>
> Captain Kraller obviously decided to participate in this "plausible deniability" scheme. Despite his characterization of his conduct as "just...a miscommunication", his testimony indicates that he knew he was participating in a deception and possibly a double deception. Not only did he obtain proprietary information of the APA under the false pretense that he was Glenn Schafer, but he also implicitly agreed with Goldberg to help maintain a cover up as to any role that Schafer might have. This use of the password was analogous to the use of a third person's ATM card and PIN without permission and with the encouragement to use it "as you see fit." That phrase from Mr. Goldberg put most of the burden on Captain Kraller and he readily accepted it, like accepting stolen goods."

Pollenz's Failure to Appear

Though written notice of the hearing was provided on November 21, 2002, and again on November 26, 2002, Pollenz states that he failed to appear at the disciplinary hearing on December 5 "involuntarily." Mr. Pollenz had an attorney, Mr. Held, who stated by email "there was an effort to settle the issues," "Captain Pollenz and I changed our plans," and "the hearing original scheduled for tomorrow will have to be rescheduled." The charging party, John Bury, denied that he had entered a settlement agreement with Pollenz and did not agree to a

postponement of the hearing.

Contrary to the allegation now made by plaintiffs that the case had been settled, the letter of December 4, 2002, sent by Mr. Held says only that there were "settlement discussions," and not that there was an agreement. The letter included in Exhibit A attached hereto states as follows to the Board Chairman Gary Weller:

> "Yesterday afternoon there was an effort to settle the issues which will be the subject of two separate Article VII hearings, one of which is scheduled for tomorrow. Based on the discussions yesterday- and the agreement among the parties to reschedule the first hearing - Captain Pollenz and I changed our plans. In my case, I would be late for the hearing, but in Captain Pollenz', he can no longer make it. Accordingly, the hearing originally scheduled for tomorrow will have to be rescheduled. Please contact me so that a mutually convenient date can be established for the first hearing."

The Hearing Board's stated in its decision:

> "Mr. Held was informed by Chairman Weller that neither he nor Mr. Bury had the authority to bind this Board to a reschedule, especially on a last minute basis such as this, and that absent a written agreement dropping the charges, the hearing would go forward. Chairman Weller offered to delay the start of the next day's hearing in order to allow Mr. Held time to arrive on an early flight from Chicago on December 5, 2002. Mr. Held said that he would not attend. On December 3, Mr. Held had faxed a letter to the Appeal Board declaring himself the representative of Captains Pollenz and Kraller and listing Messrs Kraller, Pollenz, and Bury as the witnesses that he would call (page 4).

Failure to Exhaust

To ensure the impartial application of any union discipline, the APA provides for an unusual right of appeal to a neutral outside arbitrator. Article VII of the APA Constitution provides as follows:

> "E... 2.  The decision of the arbitrator shall be final and binding upon the accused, the accuser and the Association."

Article VII, E.3. specifically mandates that "all fees and expenses of the neutral arbitrator shall be borne by the Association," or APA except if the neutral arbitrator decides the appeal is in "bad faith." This assures that plaintiffs can use the appeal procedure without any financial

penalty. On January 14, 2003, Barbara Harvey requested arbitration from the American Arbitration Association ("AAA") on behalf of Kraller and Pollenz. On January 23, 2003, Ms. Harvey wrote to John Bury to confirm that the discipline will be stayed and to ask for certain conditions and demands. On January 23, 2003, the APA confirmed by letter that the decision of the Appeal Board was stayed. The APA also submitted a second letter submitting the case to arbitration by the AAA. On January 27, 2003, Ms. Harvey made various requests to the AAA "on behalf of all parties." Her requests were: That no one from Texas be allowed to serve as arbitrator, and that no labor arbitrator or lawyer be allowed to serve either. All of these were plaintiffs' requests, but had been accepted by APA. On January 27, 2003, Ms. Harvey sent a second letter to APA requesting that APA agree not to raise procedural objections to Mr. Pollenz appeal. APA has no plans to raise any procedural objection to Mr. Pollenz's appeal, but takes the position he waived his right to a hearing below. Nonetheless, by letter dated February 19, 2003, Ms. Harvey wrote to AAA that her letter of January 14, 2003 requesting arbitration was "not authorized by my clients to be transmitted to your office." She stated that the application for arbitration was withdrawn. She also indicated that she would send APA the portion of the bill ($175.00) sent to her clients, because the APA should pay (which the APA did).

On March 6, 2003, Melissa Cole confirmed that plaintiffs' request for arbitration was withdrawn. No reason was given for withdrawal of the arbitration request.

## ARGUMENT

### Standard for Review

The standard for review of a TRO motion in this Circuit should reflect the standard for issuance of a preliminary injunction. That standard is set forth in <u>Evergreen Presbyterian Ministries Inc, et Al. V. David W Hood, Secretary Louisiana Department of Health</u>, 235 F.3d 908,

917-98 (5th Cir. 2000), which states:

> A preliminary injunction is considered "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." White v. Carlucci, 862 F.2d 1209, 1211 (5th Cir. 1989) (internal quotations omitted) (quoting Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985)); see also Harris County, Tex. v. CarMax Auto Superstores, Inc., 177 F.3d 306, 312 (5th Cir. 1999). In order for a district court to grant a preliminary injunction, four requirements must be met:
>
> > First, the movant must establish a substantial likelihood of success on the merits. Second, there must be a substantial threat of irreparable injury if the injunction is not granted. Third, the threatened injury to the plaintiff must outweigh the threatened injury to the defendant. Fourth, the granting of the preliminary injunction must not disserve the public interest. (cite)

Plaintiffs have no likelihood of succeeding on the merits, as stated further below, dismissed for failure to exhaust internal union remedies.

## I
## Plaintiffs Had Fair Notice That it Is Punishable Conduct to Gain Entry under False Pretenses to the Union's Computer Database.

Plaintiffs' opening brief, at page 14, misstates the offense of which they are guilty - it is not that the pilots exceeded "(t)he numerical daily quota on 'look ups'" as if the offense here is that they looked up 26 instead of 25 names.

The Appeal Board clearly states that the offense is that plaintiffs used deception and false pretenses to break into the union computer and its data base. Kraller's testimony admits, in essence, that he gained entry to the data base, by the use of a password of a National Committee Chairman without his knowledge or consent, and thereby obtained APA membership data which contained confidential information not accessible to a regular APA member. The Appeal Board is

clear that the offense here is not that plaintiffs exceeded a set number of look ups but that they accessed the confidential union data base "under false pretenses." It is beside the point that the pilots may not have misused the confidential data once they obtained it.

In <u>Boilermakers v. Hardeman</u>, supra, 401 U.S. at 243, the Supreme Court held, as noted, that a union can punish conduct that is not specifically prohibited in writing in the union constitution: the example in that case being assault on a member. Similarly, entry of a union computer data base under false pretenses is union-related conduct which any reasonable member knows is wrongful. Kraller himself knew it. When asked if he considered obtaining Schafer's permission to use the password, he testified:

> "Yes sir it did... and my determination, I said, you know, Glenn Schafer probably wants to stay at arms length on this so that, you know, <u>if any of this stuff hits the fan</u>, he has plausible deniability. So I should have... And that's my mistake, but that's water under the bridge at this point." (emphasis supplied)

Obviously, this is not protected speech. That is why the case of <u>Semancik v. Mineworkers</u>, 466 F.2d 144 (3rd Cir 1972) is so miscited here. In <u>Semancik</u>, the union was charging members under a provision that prohibited disseminating false information and making false accusations. As a result, members were being charged with violating the union constitution whenever they criticized the union leadership, i.e., for routine union dissent. For that reason, the district court voided the whole provision because it did not give fair notice <u>and</u> interfered with clearly protected political speech.

There can be no similar claim here that Kraller's deceptive breaking and entry involved any conduct protected by Title I of the LMRDA, or anyone's idea of free speech. The Appeal Board found that the breaking and entry violated both Article VII.A.4 ("Misappropriating money or property of the Association") and Article VII.A.7 ("Any act contrary to the best interests of the

APA as an institution or its membership as a whole.") In <u>Boilermakers</u>, the Court states: "...If a union may discipline its members for offenses not proscribed by written rules at all, it is surely a futile exercise for a court to construe the written rules in order to determine whether particular conduct falls within or without their scope," Id. at 246. Nonetheless, it can be fairly said that breaking and entry into a secure union data base with a top officer's password and without his consent is "misappropriating union property." And when members have tagged this information as confidential, it is surely against their best interest to let unauthorized rank and file members download it deceptively.

## II

### The So-called "Numerical Quota" Was Not the Basis for Discipline

Citing no case, plaintiffs next argue that the rule or policy limiting a rank and file's look ups to twenty-five interferes with that member's freedom of association. But that rule or policy is not the rule or policy for which these two pilots were disciplined in this case, and the issue of how many look ups the union should permit is a different issue for a different day. All that concerned the Appeal Board was the use of false pretenses to break into a secure computer data base and download information that not even pilots believe members and third parties should have the right to obtain. Accordingly, the argument is without merit.

## III

### The Board's Factual Findings Were Amply Supported by the Evidence

The evidence was sufficient to support the finding of guilt for purposes of Section 101 (a)(5) of the LMRDA, 29 U.S.C. § 411 (a)(5). This section requires only "some evidence" to sustain the charge. Indeed, <u>Boilermakers</u> warns "(a) stricter standard... would be inconsistent

with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record." Id at 246.

Plaintiffs first argue that Schafer himself should have been called to testify whether he gave his permission. But Kraller himself could have called Schafer to testify at the hearing. However, Kraller testified that he did not want to <u>know</u> whether or not he had to use Schafer's permission to use the password. As the Appeal Board states, "... Kraller obviously decided to participate in (a) 'plausible deniability' scheme." Furthermore, Goldberg's unsigned affidavit says that he, Goldberg, the supposed intermediary, did not in fact give Kraller permission to use it as he did. So if Goldberg did not give Kraller permission, it is obvious that Schafer did not.

At any rate, this was not just some, but overwhelming evidence, not hearsay, but directly from the charged parties themselves, that there was a deceptive scheme.

## IV

### Defendants Had Reasonable Notice of the APA Appeal Board Hearing

Plaintiffs do not, or cannot deny, that they were formally notified on November 26, 2002, that the hearing before the APA Appeal Board had been rescheduled at their request to December 5, 2002. But the plaintiffs say, "The parties reasonably relied on their December 3rd settlement of the dispute."

Not only is this claim of a settlement false, but the plaintiffs made no such claim of settlement to the Appeal Board when on December 4, 2002, the plaintiffs notified the Appeal Board that the hearing the next day would have to be rescheduled. The letter from Robert Held dated December 4, 2002, at page five of the Appeal Board decision, makes no claim of a settlement but only of "an effort to settle the issues." Held writes that the hearing must be

rescheduled because "(b)ased on the discussions yesterday - and the agreement among the parties to reschedule the first hearing - Captain Pollenz and I changed our plans."

But the charging party denied there was any such agreement, and in any event, the Board did not approve it. As pointed out, the members of the Appeal Board had flown in from various parts of the country to conduct the hearing. The case had not settled, the charging party denied there was any agreement to reschedule, and it was appropriate for the hearing to go forward.

The Appeal Board did not have to give "notice" that the hearing would proceed, when the hearing had been set back on November 26, 2003, and plaintiffs did not seek a change from the hearing body until mid afternoon of December 4, approximately 18 hours before the start of the re-scheduled hearing.

## V

### Plaintiffs Were Not Denied a Mandatory Union Appeal

By letter of February 19, 2003, plaintiffs' counsel wrote the American Arbitration Association withdrawing the appeal, or denying that her clients had ever authorized her to appeal. The APA, on its part, had taken every step to process the appeal of both Kraller and Pollenz. Nonetheless, plaintiffs make the mysterious claim that the APA denied them the right to appeal.

The APA has facilitated, not blocked, Pollenz's right to appeal, without waiving any argument that the Appeal Board hearing could proceed without him, because of his unexcused absence. Pollenz, like Kraller, can make any argument to the arbitrator that he wishes. It was not APA, but Pollenz, who withdrew the request for arbitration.

It is equally false to say that the APA has threatened to impose a substantial monetary penalty on plaintiffs by requiring them to pay for the arbitration. Article VII.E.3 states clearly that the APA "shall bear all fees and costs of the arbitration," unless the arbitrator (not APA) decides

DEFENDANT ALLIED PILOTS' ASSOCIATION OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                                    Page 15

that the appeal was brought in "bad faith." APA, by the way, paid the entire initiation fee for this arbitration, even when part of the bill was mistakenly sent to plaintiffs.

## VI

### Plaintiffs Have Stated No Claims for Relief under Section 301 of the LMRDA

The claims that the APA violated the union constitution by its discipline are as without basis as the claims under Section 101 (a)(5) of the LMRDA. First, it should be noted that the Fifth Circuit holds that a union's interpretation of its own constitution will be given deference unless the union's interpretation is "patently unreasonable." O'Neill v. ALPA, 939 F.2d 1199 (5th Cir.1991). Plaintiffs first claim of a union-constitutional breach is that while the Appeal Board could have expelled or suspended the plaintiffs from membership altogether, it cannot impose the much lighter sanction of suspending their right to use the APA web site. But it is quite reasonable for the Board to determine that if it has the power to expel or suspend, it also has the power to impose a much lighter sanction, so light in fact as to be mainly symbolic. Second, plaintiffs claim that the APA has revoked Pollenz's appeal rights. The short answer is that the APA waived its right to do so and actually processed Pollenz's appeal. It is Pollenz, not the APA, that withdrew the appeal.

Finally, the plaintiffs claim, absurdly, that the APA violated its ten day notice requirement when it refused a last minute request by Pollenz to postpone the hearing. Obviously, the ten day notice provision does not have any application to a member's eleventh hour attempt, at his own initiative, to get a postponement.

## VII

### Plaintiffs Do Not Meet the Other Standards for Injunctive Relief

Because plaintiffs have not made out any minimal showing of a violation of Section 101

(a)(5) of the LMRDA, there is no basis for a claim of irreparable injury: That is, plaintiffs cite no irreparable injury other than the violation of the LMRDA itself, and to the extent there is no violation of the LMRDA, there is correspondingly no irreparable injury, i.e., no "chilling effect" which is presumed in a technical and per se way from the mere fact of a statutory violation. Apart from this formalistic argument of irreparable injury, which falls with the legal claim, the plaintiffs have suffered nothing more here than what is mainly a symbolic reprimand. They are still members in good standing. They can speak to whomever they please. They have simply forfeited the right to enter the non-public portion of the APA web page and their own personal right to retrieve the names and addresses.

## VIII

### Plaintiffs Have Failed to Exhaust Their Mandatory Internal Union Remedies

Not only did the APA comply with the procedural protections of Section 101 (a)(5), but this case can and should be dismissed because plaintiffs have failed to exhaust internal union remedies as required by Section 101 (a)(4) of the LMRDA, 29 U.S.C. § 411 (a)(5). Specifically, the provision thereto states that as a condition for bringing suit under Title I of the LMRDA:

> "... (a) member may be required to exhaust reasonable hearing procedures (but not to exceed a four month lapse of time) within such organization before instituting legal...proceedings..."

The right to appeal to a neutral outside arbitrator, at the union's expense, is a highly reasonable procedure which the plaintiffs refused to utilize. Indeed, they voluntarily withdrew the appeal. It is well within the court's discretion to dismiss this case outright for failure to use a neutral arbitrator from a distinguished organization like the American Arbitration Association.

Furthermore, as to the Section 301 claim to enforce the union constitution, Article VII E states that the arbitration procedure is binding upon all the parties.

DEFENDANT ALLIED PILOTS' ASSOCIATION OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                              Page 17

## Conclusion

For the foregoing reasons, the plaintiffs motion should be denied.

Respectfully Submitted,

THOMAS H. GEOGHEGAN *
Illinois Bar No. 3126689
Despres, Schwartz & Geoghegan
77 West Washington Street, Suite 711
Chicago, Illinois 60602-2803
(317) 372-2511
(317) 372-7391 FAX

_____
SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750
(214) 637-0730 FAX

* Application for Admission Pro Hac
  Vice to be filed or currently pending

DATED: April 18, 2003

COUNSEL FOR DEFENDANT
ALLIED PILOTS ASSOCIATION

DEFENDANT ALLIED PILOTS' ASSOCIATION OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION                Page 18
D:\I\~\Brief1.wpd

## Verification

I declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that I attended and have personal knowledge of the proceedings before the APA Appeal Board described in this brief and collateral matters relating to the request for postponement of the proceeding on December 5, 2002, and facts and circumstances relating to appeals under the APA Constitution and the facts set forth in this brief with respect to these matters are within my personal knowledge and are true and correct. *Executed on Apr. 18, 2003*

_____
John Bury

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served this 18 day of April, 2003, by the means specified below, addressed to the following:

Barbara Harvey  
645 Griswold, Suite 3060  
Detroit, Michigan 48226                     (Via certified mail r.r.r.)

Stephen Gardner  
Law Office of Stephen Gardner, P.C.  
6060 N. Central Expressway, Suite 560  
Dallas, Texas 75206                         (Via certified mail r.r.r.)

_____  
Sanford R. Denison