

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 2 2 2003
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| JEFFREY A. KRALLER and ALAN POLLENZ, | § § § |
| Plaintiffs, | § § |
| v. | §   Civil Action No. 3 03CV--761P |
| | § |
| ALLIED PILOTS ASSOCIATION, a Labor Organization, | § § § |
| Defendant. | § § § |

# REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Stephen Gardner, Esq.
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone: (214) 800-2830
Facsimile: (214) 800-2834

Barbara Harvey, Esq.
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone: (313) 963-3570
Facsimile: (313) 963-3572

Attorneys for Plaintiffs

# REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## ARGUMENT

A.  *Defendant Relies Exclusively on a Finding for Which There Is <u>No</u> Evidence in the Record.*

Defendant takes the position that plaintiffs were disciplined *only* for accessing the membership data base "under false pretenses" by assertedly unauthorized use of a committee chair's pass code, and *not* for violating a claimed union policy against accessing more members' e mail addresses than a daily numerical quota allowed. Def. Brief, at 11-12, 13. This position simplifies the dispute.[1]

Defendant's position is not factually defensible. Captain Kraller testified that plaintiffs believed in good faith that they had the pass holder's authorization. Until he actually used it, thereby calling up the pass holder's name, Kraller assumed that the pass code belonged to Jason Goldberg, from whom he had received it. Upon seeing that the pass code belonged to Captain Glenn Schafer, Kraller immediately contacted Goldberg to confirm that his use of the pass code was authorized.[2] Goldberg confirmed that Kraller's use of Schafer's pass code was authorized, and that Kraller was also authorized to allow Captain Pollenz to use it. App. 2, 3, 6, 8 - Pls. Exh. ("PX") H - Hrg. Tr. 73-74, 94, 121. *There was no contrary evidence.* The hearing record does not support the finding that plaintiffs' use of Captain Schafer's pass code was unauthorized; the record supports *only* a finding that plaintiffs' use of the pass code *was* authorized.

---

[1] The appeal board decision was contradictory. The "Decision" section opened with a finding that plaintiffs' wrongdoing was using another member's pass code without his authorization. But the decision later condemns plaintiffs for circumventing the numerical quota, as well:

> While APA permits limited access to information on individual members, it is the policy to bar the use or conversion of the list. The charged parties acted under false pretenses *to obtain, in effect, a valuable asset of the organization. By doing so they have misappropriated property* within the meaning of Article VII.A.4 of the APA Constitution.

Plaintiffs' Exh. F - Decision (emphasis added).

[2] Defendant seizes upon Kraller's reference to "your" pass code in his e mail message to Goldberg, attaching sinister intent to the choice of words. Defendant unduly emphasizes a casual choice of words in a communications medium marked by informality and sloppiness, in a message that the author assumed to be of no great significance to anyone.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION, page 2

As the decision has now been clarified, authorization was the central and controlling factual issue. Defendant could and should have presented evidence on it. To do so, defendant needed to call Captain Schafer as a witness. It did not. While plaintiffs, as the charged parties, theoretically could have called Captain Schafer as their witness (assuming no changes to his schedule as a result of the December 3rd settlement), plaintiffs had no obligation to do so. Defendant, as the charging party, carried the burden of proof, and therefore the obligation to produce the witness whose testimony was essential to its case. Captain Kraller made it clear at the hearing that he assumed that Captain Schafer chose not to become personally involved, App. 4 - PX H, at 75, and Captain Kraller honored that perception by refraining from dragging Captain Schafer actively into the recall campaign and the hearing.[3]

The appeal board dealt with the absence of evidence on the central issue of fact by concluding: "Regardless of whether Goldberg had Schafer's permission or not, both *Kraller and Pollenz had an obligation to get Schafer's permission personally.*" PX F - "Conclusion" (emphasis added). This conclusion is factually and legally unsupportable.

It is factually unsupportable because the informal and casual swapping of pass codes among members -- for precisely such purposes as Captain Schafer allowed his to be used by Captains Kraller and Pollenz -- is a common practice. App. 11 - Goldberg decl. ¶ 4. Nor is there any union rule, policy, or unofficial practice establishing restrictions on how union officials may use their official pass codes or procedures to be followed in allowing members-at-large to use them. App. 32 - Schafer decl. ¶ 4.

Defendant's assertion that plaintiffs were duty-bound to take independent steps to confirm Goldberg's authority is legally indefensible, as contrary to the doctrine of apparent authority, a settled doctrine of agency law. The doctrine of apparent authority is particularly well known to labor unions, whose members have been bound to collective bargaining

---

[3] Defendant treats Kraller's simple courtesy to Schafer as somehow amounting to a sinister conspiracy of deception between Goldberg and Kraller.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION, page 3**

agreements that were not actually authorized to be executed, due to the absence of lawful membership ratification, because the employer was entitled to rely on the union agent's apparent authority to execute collective bargaining agreements, ratified or unratified. *E.g., Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.,* 799 F.2d 1098, 1113 (6th Cir. 1986).

Had defendant called him to testify at the hearing, Schafer would have testified that use of his pass code was authorized — perhaps explaining why defendant failed to call him as a witness. Schafer authorized Jason Goldberg to pass along his pass code, for use in collecting e mail addresses. John Bury, who prosecuted the case for the defendant, called Schafer *after* the hearing to request that he give a post-hearing affidavit, a request suggesting that Bury realized, belatedly, that defendant's case required Schafer's testimony. Schafer refused to testify against Captains Kraller and Pollenz. App. 32 - Schafer decl. ¶¶ 6-8.

Defendant's "false pretenses" finding is not supported by "some" evidence, the applicable standard of proof under *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman,* 401 U.S. 233 (1971). It is supported only by Bury's hearsay assertion — which would have been contradicted by the testimony of the witness having actual knowledge. The decision is supported by no evidence at all.

### B. The Disciplinary Action Against Plaintiffs' Associational Right Was Required to Be Justified by Their Violation of a Specific Union Rule.

Resorting to the conclusory argument that there is no free speech right to engage in "breaking and entering," Def. Brief, at 12-13, defendant denies that this case is governed by *Semancik v. United Mine Workers of America Dist. No. 5,* 466 F.2d 144 (3d Cir. 1972), requiring proof that an existing specific union rule was violated to justify disciplinary action against the exercise of members' free speech or association rights. But plaintiffs do not claim a free speech right to engage in breaking and entering. Plaintiffs were gathering e mail addresses so that they could engage in a political campaign within the union. Defendant does not dispute that plaintiffs

were entitled to gather those e mail addresses and committed no actionable wrongdoing by using another member's code -- with or without authorization -- to exceed the numerical daily quota.

"Misappropriation" or "breaking and entering" are not strict liability offenses. Intentionality is a required element of the offense.[4] Finding oneself in possession of data that was neither sought nor knowingly acquired is an innocent mishap, not a crime. Defendant does not dispute the absence of evidence showing plaintiffs *intended* to gather private e mail addresses. Nor does defendant claim that plaintiffs' unintended acquisition of that data, which plaintiffs promptly destroyed without using, was wrongful.

Defendant claims, instead, that plaintiffs' intentional act was using the pass code of another member without his authorization. As shown above, defendant failed to produce any supporting evidence, because there was none; the truth was otherwise. The absurdity of the defendant's position is exposed by assuming the factual soundness that it lacks and following it through — only to reach the inevitable conclusion that even were the accusation supported by evidence, it would not amount to "breaking and entering," because *plaintiffs lacked any wrongful intent*. See note 5, *supra*. Their undisputed sole intent, as they have openly admitted from the outset, was to circumvent the numerical quota — an intent that defendant, after a hearing, did *not* find to be wrongful. There was no *mens rea*, and therefore not even an arguable or hypothetical offense.

C.  *The Discipline Violated Section 101(a)(5) as a Pretext to Stifle Plaintiffs' Free Speech Right to Conduct Their Recall Campaign.*

In the absence of factual justification for defendant's conclusion that plaintiffs "misappropriated union property" and accessed data under "false pretenses," the defendant's

---

[4] "Breaking into" is defined as "[b]reaking with burglarious intent." "Burglary" is defined as:

> The breaking and entering the house of another in the nighttime, *with intent to commit a felony therein,* whether the felony be actually committed or not.

BLACK'S LAW DICTIONARY (rev. 4th ed. 1968) (emphasis added).

disciplinary action may be explained only as a pretext for unlawful retaliation against the organizers of the recall campaign and a measure to stomp out that campaign. In fact, there is much evidence pointing to this unlawful pretextual purpose:

1. The hypocrisy of the defendant's action against plaintiffs starkly revealed a few days ago, when an officer of the Association abused his officer's pass code privileges to send a member's *private* e mail address to the entire membership at his domicile. The member, Jason Goldberg, had filed an affidavit on behalf of the plaintiffs in *Carey v. Allied Pilots Association*, Civil Action No. 4:03-CV-277-Y (N.D. Tex. Apr. 14, 2003), a suit to enjoin membership voting on the concessions package recently tentatively approved by the Association. Falsely identifying Goldberg's private e mail address as "public information" -- presumably to avoid offending members by his conduct -- after looking it up in the membership data base, the officer, Gary Boettcher, sent Goldberg's private e mail address via "blast" e mail to the membership, with a message angrily criticizing Goldberg and others associated with that lawsuit and urging members to use Goldberg's e mail address to let him know what they thought of his role in that lawsuit. App. 11-12 - Goldberg decl. ¶¶ 5-9, 11-12, and exhibits. Boettcher intentionally abused his official pass code to intimidate and harass a witness in a federal lawsuit and to retaliate against him for exercising his statutory right to participate in litigation to enforce LMRDA Title I rights, a separate violation of the LMRDA. 29 U.S.C. § 101(a)(4).

2. It is not only common practice for pass codes to be exchanged to facilitate the downloading volumes of of e mail addresses, as shown earlier. Other members have downloaded the *entire* membership data base, without disciplinary consequences. App. 5 - PX H, at 83.

3. The discipline imposed against plaintiffs excludes them from the most effective medium for communicating with other members, the official web site, and effectively cripples their recall campaign.

4. To impose the discipline against plaintiffs, defendant was compelled to amend its constitution and impose the disciplinary action under authority of this *ex post facto* amendment.

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION, page 6

Defendant's argument that it did not need to amend its constitution to impose such disciplinary action is unpersuasive. The pre-amendment constitution unambiguously specified three forms of discipline: fines, suspension, and expulsion. PX A, at 19 – const. art. VII.A. If the more severe penalties implied a power to impose different, "lesser" penalties, then the constitutional amendment was a superfluity. To interpret the constitutional amendment as superfluous violates a basic rule of contract interpretation, which requires an interpretation that gives meaning to all provisions, leaving no extraneous provisions. Elkouri and Elkouri, HOW ARBITRATION WORKS 493 - 94(5th ed. 1997) (copy attached). (For the same reasons, plaintiffs' section 301 claim is meritorious. Space limitations prevent further attention to the section 301 claim, in this brief.)

5. The timing of the constitutional amendment further evidences the pretextual character of the discipline: The charges were dated October 24, 2002; the board of directors approved the constitutional amendment on November 7, 2002; and notice of a hearing on the charges was sent November 21, 2002. PX "B," "D," "E."

6. The case against plaintiffs was apparently the first internal union disciplinary hearing in about a decade. App. 7 - PX H, at 117; App 32-33 – Schafer decl. ¶ 9. During that time, it was a common practice for members to compile and use e mail lists for internal union political campaigns, including campaigns for union office, by using other members' pass codes. App. 11, 32 - Goldberg decl. ¶ 4; Schafer decl. ¶ 5. In 1999, misbehaving officers and members went unpunished, though they committed misconduct that caused devastating injury to the Association: $45,500,000 in liability for compensatory damages for civil contempt -- by any measure, a more serious offense than the claimed wrongdoing in this case. See App. 32-33 - Schafer decl., ¶ 9.

### D. Defendant Misstates Both Facts and Law to Argue for Application of an Exhaustion Doctrine, Which Is Inapplicable.

LMRDA, section 101(a)(4) makes it unlawful for a union to interfere in any way with a member's right to sue under the LMRDA, with the proviso that members "may" be required to exhaust "reasonable" hearing procedures "not to exceed" four months. 29 U.S.C. § 411(a)(4).

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION, page 7**

This proviso is "a statement of policy that the public tribunals whose aid is invoked may in their discretion stay their hands for four months, while the aggrieved person seeks relief within the union." *NLRB v. Marine Workers,* 391 U.S. 418, 426 (1968). The proviso "modifies the traditional requirement of exhausting internal remedies" by making it permissive, rather than mandatory, and capping it at four months. *Calhoon v. Harvey,* 379 U.S. 134, 145 (1964). "[T]he proviso does not establish a jurisdictional bar to judicial review ...." *Fulton Lodge No. 2, IAM, v. Nix,* 415 F.2d 212, 216 (5th Cir. 1969), *cert. denied,* 406 U.S. 946 (1972), citing *Marine Workers, supra,* at 427-28; *followed, Chadwick v. IBEW, Local Union No. 175,* 674 F.2d 939, 942 (D.C. Cir. 1982); *Detroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir. 1961), *cert. denied,* 366 U.S. 929 (1961).

There are long-recognized scenarios in which it is inappropriate for a court to require even four months of efforts to resolve the dispute through internal remedies. Included are cases involving irreparable injuries to the exercise of Title I rights. *Semancik v. United Mine Workers of America Dist. No. 5,* 466 F.2d 144, 150-51 (3d Cir. 1972); *Sheridan v. Liquor Salesmen's Union, Local 2,* 303 F. Supp. 999, 1005 (S.D.N.Y. 1969). "[T]he courts are particularly solicitous when the right of free speech is at stake. *Fulton Lodge No. 2, IAMAW v. Nix, supra,* 415 F.2d at 217." *Semancik, supra,* at 151. Thus, it would be improper to stay these proceedings, in which plaintiffs are now suffering irreparable injuries to their most fundamental free speech right within the union: their right to engage in a political campaign among other members.

Nor may a court require exhaustion under section 101(a)(4), when to do so would keep the plaintiff out of court for more than four months. It is not possible to conclude a neutral AAA arbitration within four months. The process requires selection of an arbitrator, waiting for a hearing date on the arbitrator's schedule, waiting for a hearing transcript, filing post-hearing briefs, and waiting for the award. Labor arbitrations routinely take one or more years from the date of submission of the arbitration demand. The statute sets "an outer limit beyond which the federal judiciary may not withhold relief." *Detroy v. AGVA, supra,* 286 F.2d at 78. The statute

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION, page 8**

contemplates informal *internal* union remedies, capable of quick resolution.

Plaintiffs further submit that exhaustion ought not to be required when the union's "internal" remedy is formal arbitration, in which the member feels compelled to retain private counsel. The APA may be the *only* labor organization whose constitution specifies formal arbitration as its "internal union appeal." Professional arbitrators have no experience or familiarity with the governing LMRDA principles, and representation will therefore be *more* expensive than, for example, the usual labor arbitration. Exhaustion of union remedies was not intended by Congress to exhaust the member's finances, making it impossible for the member to finance both his internal union remedies and a lawsuit.

Nevertheless, plaintiffs agreed to arbitrate the dispute, if defendant would at least commit to (a) waive its procedural objections to Captain Pollenz appeal rights; (b) refrain from seeking sanctions against the plaintiffs from the arbitrator. Notwithstanding the misleading representations in its brief, defendant made neither of these commitments. Defendant was required by its constitution to file Captain Pollenz' appeal; but that filing did not waive its right to object to the arbitrator's jurisdiction over his appeal at the hearing. Defendant never waived its right to make that objection. It was not reasonable to require plaintiffs to assume the costs of legal representation at the hearing, and to endure the long wait for the hearing and award, merely to argue about whether Pollenz' inability to attend the appeal board hearing forfeited his appeal rights. Nor is it reasonable for defendant to demand that plaintiffs exhaust a remedy in which the defendant has empowered the arbitrator to *impose sanctions* on plaintiffs for appealing. Defendant's dissembling response -- that it had paid the AAA's filing fee (*as required by Article VII.E.1 and 3 of its constitution*, see Plaintiffs' Exh. A, at 21-22) obscures the fact that defendant has not, to this date, agreed to waive its prerogative under Article VII to seek sanctions. Nor does defendant mention that it engaged plaintiff in nearly two months of settlement discussions following the arbitration demand, at substantial cost to plaintiffs, causing plaintiffs to believe informal settlement would be reached, when in actuality the APA had never budged from its original settlement demand. See App. 9 - PX I.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION, page 9**

## II. Conclusion

Plaintiffs respectfully ask this Court to preliminarily enjoin defendant to restore the *status quo ante* by ordering defendant immediately to remove the bar on plaintiffs' access to all members-only areas of the official web site.

Respectfully submitted,

_____
Stephen Gardner
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone: (214) 800-2830
Facsimile: (214) 800-2834
Electronic mail: steve@consumerhelper.com

Barbara Harvey
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone: (313) 963-3570
Facsimile: (313) 963-3572
Electronic mail: barbaraharvey@comcast.net

Attorneys for Plaintiffs

Dated: April 22, 2003

### Certificate of Service

A copy of the foregoing, together with the Appendix, was served on counsel for Defendant in compliance with the Rules of Civil Procedure on April 22, 2003.

_____
Stephen Gardner