

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| JEFFREY A. KRALLER and ALAN POLLENZ § § § § | |
| Plaintiffs, § | Civil Action No: 3 03 CV-761 P |
| § | |
| ALLIED PILOTS ASSOCIATION, § § | |
| Defendant. § § | |

**DEFENDANTS' SUR REPLY IN OPPOSITION TO NEW MATERIAL
IN PLAINTIFFS' REPLY BRIEF**

Because plaintiffs added new sworn statements from four new witnesses as part of a "reply," defendant Allied Pilots Association respectfully submits this very short "sur reply," to make the following five points:

### 1.

Despite all the sworn statements, there was obviously "some evidence" of deceptive misconduct; indeed there was much evidence that Kraller and Pollenz acted deceptively and obtained entry into secure confidential data without authorization. First Kraller testified there was in effect deception: that while he took "on faith" that Schafer expected someone to use his password in this way, he did not personally know, or want to know, if Schafer had authorized his entry into a restricted computer data base. When asked if he should have contacted Schafer as to use of the password, Kraller testified to the Appeal Board, at transcript page 75 (Plaintiffs' Reply Brief, Exhibit H - 4):

> "And my determination, I said, you know, Glen Schafer probably wants to stay at arms length on this so that, you know, if any of this stuff hits the fan, he has plausible deniability. So I should have, and that's right when I could have stopped the whole incident right there. And that's my mistake, but that's water under the bridge at this point."

Indeed, it was Schafer who reported to the APA that someone, unknown to him, was using his password to download confidential data. Defendants' Opposition Brief, Exhibit 2, pp 14-15. It was because <u>Schafer</u> notified APA that plaintiffs were traced and caught. Finally Kraller himself put in Goldberg's unsigned affidavit stating that Goldberg had not authorized Kraller to use the password to gain entry into confidential computer data. The parties agree that to impose discipline, the APA need only have "some evidence" of an offense. <u>Boilermakers v. Hardeman</u>, 401 U.S. 233 (1971). The evidence here amply justifies the minor penalty of suspension of plaintiffs' computer privileges for twelve months.

### 2.

It is also beside the point whether Kraller intended to "break and enter" with "felonious" or "burglarious" intent. The issue at the APA hearing was not whether Kraller and Pollenz had committed a felony, but whether without authorization they had used a top officer's password to break into a restricted confidential computer data base, where there was information that rank and file members did not want released to others. Indeed, as Schafer does not deny in his "Declaration," Schafer himself notified APA that someone had entered this confidential data base with his password. Indeed, Schafer

stated in a message to the APA Vice President that he had changed his password to prevent its further use. See Defendant's Opposition Brief Exhibit 2, page 15. Whether Kraller intended to release any of this confidential data to third parties is beside the point. As a rank and file member, he had no right to have access to it at all. As to whether Kraller believed he was engaged in misconduct, Kraller himself testified that he knew Schafer wanted "plausible deniability." And he says he was willing to give Schafer such deniability, "if any of this stuff hits the fan." Kraller's testimony at the hearing is flatly inconsistent with Schafer's Declaration in Plaintiffs' Reply Brief.

### 3.

It is true that in the past, other members have downloaded <u>non-confidential and public information</u> as to member contact information. There is no bar, except that no more than twenty-five of these non-confidential addresses can be downloaded in a 24 hour period. But Kraller and Pollenz went around this public-access system, with its checks and safeguards, to get access into a bigger (off limit) restricted data base, and did so with a password that they knew gave access beyond that permitted to a regular member. As noted above, when Schafer realized what was happening, it was Schafer who notified the APA of the unauthorized access and changed his password.

<u>Hardeman</u> says that a union does not need a written rule to punish the member's offensive conduct. Id. at 244. Courts should also not second guess how unions apply their rules, to determine if an offense comes within their scope. Id. at 244. The <u>Semancik</u> case is not "contra" the Supreme Court's decision. Rather, <u>Semancik</u> adds that when speech itself is being directly punished, such as a false statement or harmful

statement, the courts do insist on a clear notice as to the prohibited speech because the member's speech itself is the direct object here of the union's regulation. But unlike the union members in Semancik, Kraller and Pollenz were not disciplined for improper speech, or for anything they expressly said, but for breaking into a secure data base off limits to regular members.

4.

Plaintiffs claim that they need not exhaust when they face irreparable injury. But the appeal to the American Arbitration Association would have stayed the discipline. Plaintiffs' Complaint Exhibit A. (Article VII.E.4) Had plaintiffs not withdrawn their appeal, plaintiffs would have suffered no injury, no matter how long the arbitration lasted, until there was a full adjudication. Plaintiffs also complain that professional arbitrators have "no familiarity with LMRDA principles." This is an odd argument for avoiding the remedy when plaintiffs themselves insisted on as a condition that the parties not use any labor arbitrators.

5.

Finally plaintiffs submit the Declaration of Robert Held, which states under oath that the parties had in fact settled the case. His December 4 (Exhibit A of Held Declaration) letter states:

> "Yesterday afternoon there was an <u>effort</u> to settle the issues which will be the subject of two separate Article VII hearings, one of which is scheduled for tomorrow... Accordingly, the hearing originally scheduled for tomorrow <u>will have to be rescheduled</u>." [emphasis added]

The letter says nothing about an agreement being reached; rather it only says that there was an "effort" to do so. Moreover, if the matter has actually been "unconditionally" settled as Held swears, then why would he state that the hearing would need to be "rescheduled"? Held's sworn declaration is contradicted by his own letter.

## Conclusion

For the above reasons, the plaintiffs' motion should be denied.

Respectfully Submitted,

THOMAS H. GEOGHEGAN
Illinois Bar No. 3126689
Despres, Schwartz & Geoghegan
77 West Washington Street, Suite 711
Chicago, Illinois 60602-2803
(312) 372-2511
(312) 372-7391 FAX


SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750
(214) 637-0730 FAX

DATED: April 23, 2003

COUNSEL FOR DEFENDANT
ALLIED PILOTS ASSOCIATION

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document has been served on the dates and by the means specified below on the following:

| | |
|---|---|
| Barbara Harvey | (Via certified mail r.r.r. on April 24, 2003) |
| 645 Griswold, Suite 3060 | (Via fax to 313-963-3572 on April 23, 2003) |
| Detroit, Michigan 48226 | (Via email WordPerfect attachment to barbaraharvey@comcast.com on April 23, 2003) |
| | |
| Stephen Gardner | (Via certified mail r.r.r. on April 24, 2003) |
| Law Office of Stephen Gardner, P.C. | (Via fax to 214-800-2834 on April 23, 2003) |
| 6060 N. Central Expressway, Suite 560 | (Via email WordPerfect attachment to |
| Dallas, Texas 75206 | steve@consumerhelper.com on April 23, 2003) |

_[signature]_
Sanford R. Denison