

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY A. KRALLER and<br>ALAN POLLENZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3 03CV-761P |
| ALLIED PILOTS ASSOCIATION,<br>a Labor Organization, | § § § | |
| Defendant. | § § | |

## AMENDED VERIFIED COMPLAINT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiffs Jeffrey J. Kraller and Alan Pollenz bring this amended complaint against Defendant Allied Pilots Association ("the APA" or "the Association") and show the Court the following:

### Introduction

1.     This complaint arises under the free speech and due process provisions of the "Bill of Rights for Union Members," 29 U.S.C. §§ 411(a)(2), 411(a)(5), and under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Plaintiffs seek injunctive and other appropriate relief to remedy unlawful discipline imposed by the defendant union upon the plaintiffs.

### Jurisdiction and Venue

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1337(a); the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185; and the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 412.

3.     Venue is appropriate in this district, as the district in which the defendant Allied Pilots Association is headquartered and in which the alleged violations occurred, under 28

**AMENDED VERIFIED COMPLAINT, page 1**

U.S.C. § 1391(b); 29 U.S.C. § 412.

**Parties**

4.      Plaintiff JEFFREY A. KRALLER is a captain employed by American Airlines, a member in good standing of the defendant Allied Pilots Association and a resident of Denton County, Texas.

5.      Plaintiff ALAN POLLENZ is a captain employed by American Airlines, a member in good standing of the defendant Allied Pilots Association. He resides in Raleigh, North Carolina.

6.      Defendant ALLIED PILOTS ASSOCIATION ("the APA") is a labor organization within the meaning of 29 U.S.C. § 402(i), and the designated bargaining representative for the pilots employed by American Airlines, headquartered in the city of Fort Worth, Texas.

**Conditions Precedent**

7.      All conditions precedent to the filing of this action have been met or have occurred.

**Facts**

8.      In early August, 2002, plaintiffs organized a recall campaign against John Darrah as the president of the APA, in accordance with the membership's right to recall the president under Article VI of the constitution. See Exhibit "A," attached hereto and incorporated herein by reference.

9.      The APA and its members have in recent years come to rely heavily on the internet and electronic mail communications.

10.      Plaintiffs conceived their recall campaign as internet-based, and they set up a web site for it, www.recalldarrah.org .

11.      In furtherance of their campaign, plaintiffs amassed an online data base of the electronic mail addresses of individual members.

12.      The membership list for the entire membership based at each of the carrier's

**AMENDED VERIFIED COMPLAINT, page 2**

domiciles, including addresses, telephone numbers, and electronic addresses of members, has always been accessible to the entire membership at that domicile.

13.     Until 1999, the membership list, including addresses, telephone numbers, and electronic addresses of members, was published in book form and distributed to the membership.

14.     The membership list is currently maintained as an online data base.

15.     The membership data base is made accessible to the membership by means of log-in pass codes issued by the APA to all members in good standing.

16.     Upon collecting members' electronic mail addresses from the APA's online data base, in connection with their recall campaign, plaintiffs discovered that the data base had been programmed to limit any one member to collecting data on a maximum of 25 members' names in any 24-hour period.

17.     In response to plaintiffs' requests to fellow members for assistance in amassing members' electronic mail addresses for their recall campaign, some members helped in collecting electronic mail addresses, and others who did not have the time to spend themselves gave plaintiffs their log-in pass codes, with permission to use the codes.

18.     One of the log-in pass codes that plaintiffs received belonged to a union committee chair. This code was not restricted to the collection of 25 names in any given 24-hour period.

19.     Plaintiff Pollenz developed a program that automated the electronic mail address "look-up" process.

20.     Plaintiffs discovered that the union committee chair's pass code was accessing electronic addresses that had been marked "private" by members who did not wish to share them. Upon making this discovery, plaintiffs promptly purged all electronic addresses marked private from the data that they had collected. Plaintiffs did not use the private electronic addresses at any time. At the time that they used it, plaintiffs did not know that the committee chair's pass code accessed electronic addresses marked private.

21.     On October 10, 2002, defendant summarily, without notice or hearing, barred

**AMENDED VERIFIED COMPLAINT**, page 3

plaintiffs' IP addresses from all access to the Association's web site.

22.    On October 29 and 31, 2002, defendant removed the access bars on plaintiffs Kraller's and Pollenz' IP addresses, respectively.

23.    Under cover letter dated November 1, 2002, plaintiffs were charged by the defendant with "misappropriating money or property of the Association," and of an "act contrary to the best interests of the APA as an institution or its membership as a whole," by making unauthorized use of a committee chair's log-in pass code to access private information and "to download volumes of member information well beyond the limits set by the Board." See Exhibit "B," attached hereto and incorporated herein by reference.

24.    On November 7, 2002, defendant adopted a resolution that admitted that "the Association has no explicit written policy on the safeguarding of sensitive internal information," and set forth a new "confidential information policy." See Exhibit "B," attached hereto and incorporated herein by reference.

25.    By notice dated November 21, 2002, defendant set a hearing on the charges filed against the plaintiffs for December 5, 2002. See Exhibit "C," attached hereto and incorporated herein by reference.

26.    On the evening of December 3, 2002, defendant's representative, First Officer John Bury, agreed with plaintiffs' representative, Captain Robert Held, to a resolution of the internal charges against plaintiffs, including an agreement to postpone the December 5, 2002 hearing until mid-January, to allow the parties sufficient time to draft a mutually satisfactory joint statement to the members about the incident and its resolution.

27.    Plaintiffs and their hearing representative, Robert Held, canceled their plans to attend the hearing, on the basis of the December 3, 2002 agreement.

28.    In mid-afternoon on December 4, 2002, Bury informed plaintiffs that hearing chair Gary Weller had refused to postpone the hearing scheduled to begin the next morning.

29.    On the evening of December 4, 2002, a winter blizzard hit the East Coast, causing the closing of many airports and the cancellation of many flights out of the Raleigh, North

**AMENDED VERIFIED COMPLAINT**, page 4

Carolina airport. Plaintiff Pollenz was unable to make the necessary arrangements to leave on December 4, 2002, within mere hours after being informed that the hearing would proceed despite the settlement. He was prevented by the weather from departing the next morning, and therefore was unable to attend the December 5th hearing.

30.     Defendant's short notice on December 4th of its intent to proceed with the December 5th hearing date despite the settlement also prevented plaintiffs' hearing representative, Robert Held, who resides in the Chicago area, from attending the December 5, 2002 hearing.

31.     After Weller refused to postpone the hearing, Bury announced at the hearing that defendant was repudiating its settlement agreement.

32.     Plaintiff Kraller, who resides in the Fort Worth area, attended the hearing and was compelled to represent himself. He had not prepared for the hearing, in reliance upon the parties' settlement.

33.     At the hearing, defendant made a hearsay accusation, unsupported by witness testimony, that plaintiffs' use of the committee chair's log-in pass code was not authorized by the committee chair.

34.     Plaintiff Kraller testified at the hearing that plaintiffs used the committee chair's pass code on the basis of their good faith belief that their use of it had been personally authorized.

35.     Plaintiff Kraller testified at the hearing, without contradiction, that plaintiffs did not know, when they used the contested pass code, that it would download data marked "private." He also testified, without contradiction, that plaintiffs never at any time used any data that had been marked "private," and had purged all private data from their data base.

36.     On January 4, 2003, the hearing chair issued a written decision finding both plaintiffs guilty, as charged, of misappropriating union data, and he castigated plaintiffs and attacked their personal integrity and honor. He ordered plaintiffs' access to the APA web site suspended for a period of one year, effectively sabotaging their recall campaign against Darrah.

**AMENDED VERIFIED COMPLAINT**, page 5

See Exhibit "D," attached hereto and incorporated herein by reference.

37.     The discipline issued by defendant against the plaintiffs was not a disciplinary action authorized by the APA constitution at the time of the events that were the subject of the internal charges against plaintiffs. After defendant filed its internal charges against plaintiffs, however, the Association amended its constitution to grant its appeal board broader disciplinary powers.

38.     Defendant's decision denied plaintiff Pollenz his right to appeal, based on his failure to appear at the December 5th hearing.

39.     Plaintiffs conditionally filed a timely joint appeal from defendant's disciplinary decision, in accordance with Article VII.E of the constitution, asking defendant to confirm in writing that it would waive any procedural objections to Pollenz' right to appeal, and that defendant would assume the fees and expenses of the arbitrator. Defendant never provided the requested confirmation. Nor did defendant comply with any of several other conditions that plaintiffs had requested to assure a fair and impartial appeal proceeding.

40.     The parties have been unable to settle the dispute. On April 10, 2003, following plaintiffs' notice to the arbitration agency that the arbitration was proceeding on terms that plaintiffs had not authorized, the agency withdrew the proceeding from the arbitration docket. Defendant, by letter of April 10, 2003, informed plaintiffs that the discipline would be imposed effective April 15, 2003. See Exhibit "E," attached hereto and incorporated by reference.

41.     As members in good standing, plaintiffs are entitled to all of the rights, privileges, and benefits of membership, including the rights of free speech and participation in the affairs of the Union. The discipline imposed on April 15, 2003 is irreparably injuring plaintiffs' free speech and participation rights by depriving them of the right to communicate electronically on the Association web site with one another and their elected officers, and will make it impossible, as a practical matter, for them to continue their recall campaign.

42.     By denying plaintiff Pollenz' right of appeal and refusing to waive the arbitrator's fees and expenses, defendant has made further appeal futile and attached conditions to appeal

**AMENDED VERIFIED COMPLAINT**, page 6

that make further exercise of appellate rights onerous and burdensome.

43.     The resort to formal arbitration proceedings that would be required to exercise further internal union appeal procedures would entail substantially more time than the four months allowed by the Act for the exhaustion of internal union remedies. See 29 U.S.C. § 411(a)(4).

**Count I**
**Deprivations of Free Speech and Association Rights Without Due Process**

44.     The disciplinary action that defendant has imposed upon plaintiffs violated plaintiffs' due process rights, as follows:

a.     By disciplining plaintiffs for circumventing defendant's program limiting the number of "look-ups" on the membership data base to 25 in a 24-hour period, defendant disciplined them for conduct that did not violate any union rule.

b.     By disciplining plaintiffs for accidentally accessing electronic addresses marked "private," defendant disciplined them for conduct that did not violate any union rule.

c.     The evidence was uncontradicted that plaintiffs' accessing of electronic addresses marked "private" was accidental and unintentional, and that they immediately destroyed all data so marked, without using it, upon discovering that they had accessed it. There is no basis in the evidence for the appeal board's finding that plaintiffs intentionally and knowingly "misappropriated" such union property.

d.     Defendant waived any property interest in barring its own members from accessing its membership list, by historically making the data freely available to all members, first in printed form and then in electronic form, to this date.

e.     The particular discipline -- a one-year bar from all access to the Association's web site – is depriving plaintiffs of their free speech and association rights as members to communicate electronically with other members and with their elected officers, on grounds not prohibited by any union rule.

**AMENDED VERIFIED COMPLAINT**, page 7

f.     The particular discipline was not a form of union discipline that was authorized by the Association's constitution at the time of the claimed misconduct, but was added to the constitutionally allowed forms of discipline *after* the filing of internal charges against the plaintiffs and imposed on plaintiffs *ex post facto*.

g.     Defendant's adverse finding that plaintiffs used the pass code of another member without that member's authorization was erroneous, in fact, and rested solely on hearsay evidence, without affording plaintiffs their due process right to confront and cross examine that witness, whom they reasonably and correctly believed had authorized their use of his pass code.

h.     Defendant disciplined plaintiffs without any evidence of any kind that plaintiffs had a wrongful intent or any fair notice that their conduct violated any union rule.

i.     The disciplinary action was based on inadequate advance notice that the hearing would proceed as originally scheduled, despite the settlement agreement that had been reached, depriving plaintiffs of their right under the Association's constitution to representation at the hearing, and entirely depriving plaintiff Pollenz of his right to be present at the hearing.

j.     Defendant denied plaintiffs their due process right to an internal union appeal, and Pollenz his right to appeal to arbitration, notwithstanding the showing of good cause that he made for his failure to appear at the hearing.

k.     Defendant refused to assume the fees and costs of the neutral arbitrator that was the only appeal option offered to plaintiff Kraller, depriving him of a reasonable internal union appeal.

l.     Plaintiffs were tried before appointees of the same Board of Directors that prosecuted the charges against them.

45.     On October 19, 2002, and for a period of approximately two weeks thereafter, defendant summarily suspended plaintiffs' right as members to communicate electronically on the Association's official web site with fellow members and their officers, without notice or

**AMENDED VERIFIED COMPLAINT, page 8**

hearing, in violation of their due process rights under 29 U.S.C. § 101(a)(5).

46.    By the actions set forth above, defendant has violated plaintiffs' right under LMRDA, section 101(a)(5), 29 U.S.C. § 411(a)(5), to due process before being subjected to internal union disciplinary action depriving them of valuable membership rights.

### Count II – Discipline Imposed as Pretext to Suppress Dissent

47.    By various actions, some of which are detailed below, defendant betrayed an unlawful purpose to discipline plaintiffs as a pretext to suppress their recall campaign against president John Darrah, and to retaliate against plaintiffs for exercising their right to conduct a recall campaign, in violation of their free speech rights as union members under LMRDA, section 101(a)(2), 29 U.S.C. § 411(a)(2):

a.    An officer of the defendant, after participating in the decision to prosecute plaintiffs, intentionally used his official union pass code to gain access to the membership data base for the purpose of publicizing a member's private e mail address, with knowledge that it was marked as private, for the purpose of exhorting members to harass that member in retaliation for his having testified as a witness in a federal court lawsuit on behalf of political adversaries of the incumbent administration. Defendant has neither filed nor directed the filing of charges against the officer who intentionally abused his official pass code privileges, for the unlawful purpose described in this paragraph. Nor has defendant acknowledged, to date, that the victim has filed internal union charges against the officer.

b.    Over a period of years, with the defendant's knowledge and active support, defendant's officers and representatives have repeatedly gained greater access to the data base of American Airlines than would be available to them by observing the carrier's restrictions on such access, by utilizing the pass codes of rank-and-file members to circumvent the carrier's restrictions on such access, without the carrier's knowledge.

c.    Other members, not adversaries of the incumbent administration, have downloaded entire membership data bases for political purposes, rather than for official

**AMENDED VERIFIED COMPLAINT**, page 9

union business, without suffering disciplinary action or threat of discipline. Yet the defendant itself prosecuted plaintiffs for engaging in such conduct for the purpose of recalling the president.

d.    Defendant amended its constitution to empower its appeal board to impose upon plaintiffs a disciplinary penalty not provided by the constitution, that would be sufficiently lenient, and focused, as not to "backfire" politically upon the incumbent administration.

e.    Defendant disciplined plaintiffs for swapping pass codes for the purpose of more efficiently downloading membership data, a practice that violates no union rule and has been used in the past for other purposes, not related to a recall campaign against the incumbent administration, without disciplinary consequences.

f.    On information and belief, defendant has refrained from disciplining, or even stopping, a non-member from repeatedly gaining access to the members-only forum on the defendant's official web site, under a member's pass code, on a routine basis, to engage in communications having the approval of the incumbent administration, although access to the forum was at that time, and at all times, barred to the non-member as a matter of official union policy.

g.    Defendant filed the charges and took the disciplinary actions against plaintiffs that are challenged in this lawsuit, in knowing violation of established interpretation of its disciplinary provisions that they were to be used only to address extreme threats to the welfare of the institution, such as strikebreaking.

h.    On information and belief, defendant has filed charges against members within the past decade, and possibly longer, only for the similar purpose of stifling dissent, and, in another case, to intimidate a member into refraining from posting his messages on the members-only internet forum.

i.    On information and belief, the disciplinary action taken by the defendant against the plaintiffs is the first disciplinary action to have been imposed by the defendant against

**AMENDED VERIFIED COMPLAINT**, page 10

any members, for any reason, in approximately a decade, despite the occurrence during that time of member misconduct far more threatening to the welfare of the institution than the plaintiffs' claimed misconduct.

j.     Plaintiffs have never at any time within the past decade, or longer, seen any official union communications describing the substance of internal union charges against members -- except in their own case. In plaintiffs' case, for the purpose of discrediting plaintiffs' recall campaign, defendant circulated to members a communication that discredited plaintiffs personally and described the charges against them, although the union constitution prohibits such communications about pending charges.

48.     Defendant's accusations of wrongdoing against plaintiffs have repeatedly changed, as plaintiffs have responded to each accusation.

### Count III - Breaches of Union Constitution

49.     The Association's constitution constitutes a contract between the Association and its local unions, which is enforceable by plaintiffs, as members, under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

50.     At the time that plaintiffs engaged in the conduct for which they were disciplined, Article VII.A of the Association's constitution provided only for fines, suspension, or expulsion from membership as disciplinary actions against members.

51.     By imposing a bar against any and all access to the Association's official web site for a period of one year, as a formal disciplinary action against plaintiffs, the defendant disciplined plaintiffs in violation of the constitution's disciplinary provisions.

52.     By revoking plaintiff Pollenz' right of appeal for failing to appear at the hearing, notwithstanding his showing of good cause for such failure, defendant violated his right of appeal under Article VII.B.3 of its constitution.

53.     By proceeding with the hearing despite plaintiff Kraller's showing of good cause for the failure of his designated hearing representative to appear at the hearing, defendant violated his right to representation at the hearing by another member in good standing under

**AMENDED VERIFIED COMPLAINT**, page 11

Article VII.B.3 of the constitution.

## VI. Relief Requested

Plaintiffs respectfully request the Court to order the following relief:

A. Temporarily restrain, and preliminarily and permanently enjoin defendant from barring plaintiffs' access to the Association's official web site;

B. Award plaintiffs their compensatory and any appropriate punitive damages;

C. Award plaintiffs their reasonable attorney fees and costs; and

D. Order such other relief as the Court may deem appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

BARBARA HARVEY
Admitted *pro hac vice*
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone:     313/963-3570
Facsimile:     313/963-3572
Email: barbaraharvey@comcast.net

STEPHEN GARDNER
Texas State Bar No. 07660600
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:     214/800-2830
Telecopier:     214/800-2834
Email: steve@consumerhelper.com

Attorneys for Plaintiff,
by:

STEPHEN GARDNER

**AMENDED VERIFIED COMPLAINT**, page 12

## VERIFICATION

I declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Jeffrey A. Kraller

Dated: May 6, 2003

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on counsel for Defendant in compliance with the Rules of Civil Procedure on May 6, 2003.

STEPHEN GARDNER

**AMENDED VERIFIED COMPLAINT**, page 13