

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JEFFREY A. KRALLER and<br>ALAN POLLENZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3 03CV--761P |
| ALLIED PILOTS ASSOCIATION,<br>a Labor Organization, | § § § § | |
| Defendant. | § | |

## DECLARATION OF DAVID BATES

David J. Bates declares as follows, based on personal knowledge:

1. I have been a pilot for American Airlines for 20 years and am presently a 777 Captain based in Miami ("MIA"). I have served as an officer of the Allied Pilots Association ("APA"), as a member of its board of directors, and as a member and chairman of the National Communications Committee. I am currently an APA member in good standing.

2. It is my understanding that the Association has taken the position in this lawsuit that the plaintiffs engaged in punishable misconduct by intentionally gaining access to the online membership data base under a pass code that was not their own, but another member's, who had authorized their use of his pass code to download e mail addresses not flagged as private. I also understand that the member who authorized the plaintiffs to use his pass code in this manner was the Contract Compliance Committee chair.

3. As a former Communications Committee chairman and a member in good standing, I am aware of no official prohibition against such use of other members' pass codes. Nor do I know of any official limitations on the use of national officers' and committee members' pass codes. As described below, the Association itself has historically gained access to the American Airlines computer data base by just such devices.

4. In 1993, I was approached by a member of the APA's Technical Research and Analysis Committee ("TRAC"). TRAC was established by the APA to obtain, monitor, and interpret operations data of American Airlines, for the purpose of administering and policing the collective bargaining agreement.



5. American Airlines' operations data was at that time and continues to be maintained on a mainframe computer system, called Sabre. Access to the data stored on the Sabre system, during the time period that I had personal knowledge of such matters as the chair the Communications Committee from 1994 to 1996, was only by pass code. Pass codes were distributed by American Airlines to its employees, including its pilots. Usually for a cost not exceeding the nominal monthly access fee of approximately $3 to $5, members were able to satisfy their own personal needs for accessing the Sabre data base.

6. During my tenure as Communications Committee chairman, American Airlines did not provide separate pass code access to the APA. (Indeed, gaining direct APA access to the Sabre data base was one of the APA's bargaining goals in the 1996 contract negotiations.) Thus, access to Sabre by the APA was limited to such access as was available to APA officers and representatives, as employees of American Airlines.

7. APA determined that effective and timely monitoring and analysis of American Airlines' operations data would be possible if the Association were to use its members' pass codes, allowing collection of data from multiple servers, simultaneously. The TRAC committee therefore solicited members to authorize the use of their pass codes to permit the "mining" of data from the Sabre system by multiple simultaneous "log-ins."

8. I authorized the use of my pass code for TRAC to obtain data from the Sabre system. Members of this committee logged on to the Sabre system using my employee number and pass code. I was charged by American Airlines for accessing the Sabre system, through payroll deduction. I was reimbursed by the Association for these charges.

9. TRAC utilized my pass code to gain access to the Sabre system under my employee number and pass code, beginning in about July, 1993 and continuing through the Summer of 1996. Payroll records, some of which are attached to this affidavit, show total deductions from my pay for the APA's use of my password amounted to $13,855.38. My estimate is that the APA was accessing the data base through my pass code very heavily, and perhaps continuously, during periods of 1995 and 1996. At the time, I was informed by the APA that "dozens" of other committee chairs and members, in addition to myself, had also authorized the APA to use their pass codes in the same manner, to mine the Sabre system for data.

10. The APA's use of its members' pass codes, with member permission, to mine data from the Sabre system was authorized by the APA as a matter of long-term official practice. The APA has expended considerable Association funds on reimbursing members for such authorized use. There has never been any question about the propriety of this practice of accessing the company's data base under identities

2

other than the users' identities, under the APA's constitution or any of its official policies.

11. In 1990-91, I became actively involved in a campaign to oust the APA's incumbent San Francisco domicile chairman and vice chairman. In support of our campaign, I sent to the San Francisco membership a campaign letter critical of the incumbent domicile leadership and published their voting records on key issues. Both officers lost the election. Although it was my understanding that political speech within the Union was protected by federal law, the former APA officers filed internal union charges under Article VII of the APA constitution for my alleged "misconduct" in making certain critical statements in my campaign mailing. These APA officers received advise and perhaps assistance from APA national. Ultimately, after a hearing before the domicile, an appeal to the Appeals Board, and a full arbitration proceeding in a further appeal to the American Arbitration Association, the arbitrator ruled that there was no Article VII jurisdiction of charges based on the content of members' political speech within the Association. A copy of the arbitrator's award is attached to this declaration.

I declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

_____
David J. Bates

Dated: May 28, 2003

3