ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 16 2003

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| JEFFREY A. KRALLER and ALAN POLLENZ | § § § § |
| Plaintiffs, | § § |
| ALLIED PILOTS ASSOCIATION, | § § |
| Defendant. | § § § |

Civil Action No:  3 03 CV-761 P

## DEFENDANT APA'S REPLY IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

THOMAS H. GEOGHEGAN
Illinois Bar No.  3126689
Despres, Schwartz & Geoghegan
77 West Washington Street, Suite 711
Chicago, Illinois 60602-2803
(312) 372-2511
(312) 372-7391 FAX


SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750
(214) 637-0730 FAX

DATED: June 16, 2003

COUNSEL FOR DEFENDANT
ALLIED PILOTS ASSOCIATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Supplemental Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I       Plaintiffs have failed to show a violation of Section 101(a)(5) under the standard of <u>Boilermakers v. Hardeman,</u>401 U.S. 243 (1971). . . . . . . . . . . . . . . . . . . . . 10

II     Plaintiffs have failed to show "substantial evidence" of a political reprisal in violation of Section 101(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III    Plaintiffs have failed to state a claim for breach of the union constitution. . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Miller v. Holden, 535 F.2d 912, 9115 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Boilermakers v. Hardeman,401 U.S. 243 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Black v. Ryder Nationwide, Inc., 970 F.2d 1461 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 12

Yager v. Carey, 910 F. Supp 704, 715(DC 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Frye v. United Steelworkers of America, 767 F.2d 1216, 1225 (7th Cir.  1985) cert. den. 474 U.S. 1007. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Parks v. IBEW, 314 F.2d 886, 913 (4th Cir. l963) cert. den. 372 US 975.  . . . . . . . . . . . . . . . . 13

O'Neil v. ALPA, 939 F.2d 1199, 1206  (5th Cir.  1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Newell v. IBEW, 789 F.2d 1186, 1189  (5th Cir. 1986).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

Labor Management Reporting and Disclosure Act, Section 101(a)(5) . . . . . . . . . . . . . . . . . . . . 7

Labor Management Reporting and Disclosure Act, Section 101(a)(2) . . . . . . . . . . . . . . . . . . . . 7

Labor Management Relations Act, Section 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY A. KRALLER and | § | |
| ALAN POLLENZ | § | |
| | § | |
| Plaintiffs, | § | Civil Action No:  3  03 CV-761 P |
| | § | |
| ALLIED PILOTS ASSOCIATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT APA'S REPLY IN OPPOSITION TO PLAINTIFFS' RENEWED
MOTION FOR PRELIMINARY INJUNCTION**

**Introduction**

To restate our case: plaintiffs' "renewed" motion, like its first, fails to show any

likelihood of "success on the merits."  The basis of John Bury's charge, the reason for the APA

Appeal Board's decision, are matters of record.  See Exhibit 2 of Defendant Allied Pilots'

Association Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary

Injunction (filed April 18, 2003).  Plaintiffs' attempts to impute a different charge and  a different

decision are improper and unhelpful.  Contrary to plaintiffs' claim, the letter of October 24, 2002

by  John Bury charges not "two" but only one violation, a "deception" by Kraller and Pollenz, to

gain access to the APA computer "by using the entry code of an APA Committee Chair without

the Chair's permission or his authorization."   The charge further states:

"As a result of this deception, they gained access to categories of private pilot information

the APA's Board of Directors had declared off limits to ordinary members and employed the

same deception to download volumes of information well beyond the limit set by the Board."

(emphasis supplied)

But it is the deception, not the result, that is the basis of the charge and the basis of the discipline.  Plaintiffs still fail to grasp the point, at least in the briefing.  At the hearing, however, Kraller had no trouble understanding that he was charged with deception. In the end he admitted as much.  In his own words, he said that he did not know or want to know if he had Schafer's permission.  He did not want to know, so he could preserve "deniability" for Schafer, if Kraller's entry into the computer were detected, or if (as Kraller put it) "any of this stuff hits the fan."

Significantly, Kraller also acknowledged before the APA Appeal Board that he could have "stopped the whole incident" and that he "should have" asked Schafer for his permission. But he added, "That's water under the bridge..."

The  APA Appeal Board disagreed that it was "water under the bridge," and imposed a penalty, albeit a very light one.   Based on Kraller's own testimony, and plaintiffs' other evidence, including Jason Goldberg's unsigned affidavit, the APA Appeal Board stated in part:

> "The evidence shows and Captain Kraller freely admitted in recorded testimony that he and Captain Pollenz used a committee chairman's password without his permission to bypass a system limitation and thereby gain unlimited access to member information from the APA data base....

> "Regardless of what information they did or did not download, they accessed the information under false pretenses.  Regardless of whether Goldberg had Schafer's permission or not, both Kraller and Pollenz had an obligation to get Shafer's permission personally.  No honorable person would use a third person's confidential password without permission.  Despite Captain Kraller's denial, his conduct was deceptive."

The Board offered a further point about the deception:

> "(N)ot only did [Kraller] obtain proprietary information of the APA under the false pretense that he was Glenn Shafer, but he also implicitly agreed with Goldberg to help maintain a cover up as to any role that Shafer might have."

The APA Appeal Board then quoted from Jason Goldberg's unsigned affidavit, which Kraller offered oddly enough in his own behalf.  The affidavit is similar to Schafer's, which has now been submitted in this case long after the hearing.  In Goldberg's unsigned affidavit,

Goldberg agrees that he, not Schafer, gave Schafer's password to Kraller. Goldberg then adds, defensively, that he gave Kraller "no express or implied permission to use the password in violation of the APA Constitution." He also adds, even more defensively, that he "had no specific knowledge of the extent to which Kraller intended to use the password." This hardly exonerates Kraller from the charge.

In opposing this motion, then, defendant APA relies upon the charge of October 24, the testimony by Kraller, the affidavit of Goldberg, and the APA Appeal Board decision of January 4, 2003. The defendant has not "modified" or "repudiated" anything in these documents, which speak for themselves. For plaintiffs to make this argument is absurd. Nor do plaintiffs quote or cite any brief or memorandum in this case where the defendant "repudiates" or "modifies" either the charge or the APA Appeal Board decision.

Furthermore, the gist of the charge is "deception," not the result of the deception. And with respect to this deception, there is no variation between Bury's charge and the APA Appeal Board's decision.

It is true that the APA Appeal Board is chary of imposing discipline, as plaintiffs note. It is unsurprising, then, that the discipline imposed by the APA Appeal Board is light, under the circumstances. As noted by the Fifth Circuit in Miller v. Holden, 535 F.2d 912, 9115 (CA 5 1976), all such union discipline by its nature "separates" the disciplined member from the membership. Nonetheless, the "separation" in this case is, by comparison to the cases cited in this briefing, very slight. Kraller and Pollenz are still members in good standing. They can still vote, run for office, attend the APA "domicile" meetings, and they can e mail other members as to any matter they choose. Indeed, now that plaintiffs possess the membership list, they now have an oddly enhanced ability to e mail other members and express their views, via computer.

6

All the discipline consists of is suspension from the use of non public parts of the APA web site. Even so, they remain in computer contact with the APA, and receive all the official union emails, or "blasts" sent to other members. Among other things, the discipline bars them from use of the APA computer "chat room," which only ten percent or fewer of the APA members ever use.

### The Supplemental Allegations

Plaintiffs filed their original complaint under Section 101(a)(5) of the LMRDA and Section 301 of the LMRA. They claimed that the discipline denied them their due process rights under section 101(a)(5) of the LMRDA, and that the discipline imposed was not "authorized" by the APA Constitution, in violation of Section 301 of the LMRA. After a status hearing before this Court on May 2, 2003, and after plaintiffs filed a further letter on May 5, 2003, the plaintiffs filed an amended complaint and argued a new issue, that the discipline was a political retaliation in violation of LMRDA Section 101(a)(2).

Then plaintiffs filed a "renewed" motion on June 3, 2003. Plaintiffs now insist that in the status hearing, off the record, defendant APA repudiated or modified its rationale for the discipline. This is untrue. There is no repudiation or modification of the charge of October 24, 2002, or the APA Appeal Board decision of January 4, 2003. Nor is there "two parts" or "three parts" to the charge against Kraller or Pollenz. Nor did the hearing vary from the charge, even if the very strictest standards of law were to apply (and they do not, in such union hearings).

Plaintiffs complain that the APA Board of Directors acted improperly by amending the APA Constitution after the charge by Bury was filed, to provide expressly that the APA Appeal Board could impose lesser discipline than suspension, expulsion, or fine. As set out in the Declaration of Gary Weller, in the Supplemental Appendix, the chair and members of the APA

7

Appeal Board did not know that the APA Constitution had been amended. They do not communicate with, and allow no input from the Board of Directors. Rather the APA Appeal Board determined that as a reasonable interpretation of the APA Constitution, they had the power to impose a lesser penalty, and did so.

Throughout the case, the plaintiffs loosely conflate the APA Board of Directors, the charging party John Bury, and the APA Appeal Board as if they were the same people. They are not. The APA Appeal Board is a body of three persons, elected for two year terms by the APA Board of Directors. The APA Appeal Board is, and has been, independent of the APA Board of Directors. Though the APA has undergone electoral changes, and had contested elections, and changes of administration, Gary Weller, the chair of the APA Appeal Board, has served under and independently of, the various administrations.

The Board of Directors itself has no role in the process. Contrary to what plaintiffs allege, the Board did not "vote" or "authorize" the filing of the charges. A single member, John Bury, who is also an officer, brought the charges. Any member of APA, including Kraller, or Pollenz, or Shafer, is also free to file charges, and plaintiffs who have in fact filed charges are well aware of this. Unless a member brings a charge, the APA Appeal Board cannot act or rule.

With that background, we turn to the plaintiffs' supplemental statement of facts, which are untrue or irrelevant or both.

1.   Plaintiffs claim: APA members have entered the "confidential data base" of American Airlines, without being disciplined. APA responds: (i) APA has no information regarding this allegation. (ii) No APA member has ever filed charges with the APA Appeal Board, so there has been no occasion for the APA to take any action. (iii) It is unclear if the APA Appeal Board would have any

8

jurisdiction of a charge that breached a rule not of APA but of the employer, American Airlines.

2.      Plaintiffs claim:  Gary Boetticher, an officer, has abused his right as an officer to obtain confidential data by finding and publicizing the confidential e mail of Jason Goldberg.  APA responds:  (i) With respect to this matter, Goldberg sent a charge by e mail to the APA Appeal Board, which replied that under the rules Goldberg must submit the charge in writing, not e mail, by certified mail.  To date, Goldberg has not filed a charge.  (ii) On information and belief, APA states and understands that Boetticher denies the charge, and says that Goldberg himself gave out his email over the internet.  (iii) If and when Goldberg files a charge, the APA Appeal Board will act upon it promptly.

3.      Plaintiffs claim:  Other APA officers have downloaded nonconfidential data. APA responds:  APA officers have that privilege.  Kraller and Pollenz were not officers.

4.      Plaintiffs claim:  The discipline in this case was the first in a decade.  APA responds:  The APA Appeal Board has a tradition of acting in a cautious and measured way.  In this case, for example, where discipline was justified, the APA Appeal Board chose to impose a very light form of discipline, suspension from the web site.  Plaintiffs also complain, hypocritically, that the APA Appeal Board failed to discipline members like themselves who took part in the "sick out."  As plaintiffs know, the current officers have different views than those who were the officers at the time of the "sick out."  At any rate, no member, least of all plaintiffs or their supporters, filed charges with the APA Appeal Board.

9

5.    Plaintiffs claim:  A member's wife broke into the chat room with her husband's pass word.  APA responds:  This was a de minimis matter, and no member filed a charge.

6.    Plaintiffs claim: The charges against Kraller and Pollenz were publicized in violation of Article VII.  APA responds: The APA was required to notify members that there was unauthorized entry into the secure parts of the computer data base, i.e., that the confidentiality of the personal information the members had tagged as private had been compromised.  (Members had phoned in to say that their personal information had been "accessed")

7.    Plaintiffs claim: The APA Board amended the Constitution to give the Appeal Board a "lenient" form of punishment, so that the charges would not "backfire politically."  APA responds: Aside from being speculative opinion as to what will "backfire politically," the charge is untrue.  As set out in the Declaration of Gary Weller, the APA Appeal Board was not aware of the amendment at the time it imposed discipline, so it had no effect on the APA Appeal Board's action.

8.    Plaintiffs claim: A "David Bates" was not charged for using the list for political purposes.  APA responds: Members can and do use the list for political purposes.  That was not an element of the charge against Kraller or Pollenz.

All of these "supplemental" facts do nothing to establish plaintiffs' case that the decision of the APA Appeal Board was improper.  We now turn to the legal argument.

## ARGUMENT

### Plaintiffs have failed to show a violation of Section 101(a)(5) under the standard of Boilermakers v. Hardeman, 401 U.S. 243 (1971).

While plaintiffs may chafe at the Supreme Court's holding in Hardeman, the "some

10

evidence" rule applies to the claim under Section 101(a)(5). <u>Hardeman</u> also says it is "futile" for a court to second guess whether the conduct of a member violates a union rule. Id. at 244. Indeed, the "rule" applied need not be in writing, or even have been in effect <u>before</u>! Id. at 244-245. Given <u>Hardeman</u>, plaintiffs simply have no case, and may have realized this when they amended the complaint. Kraller's testimony, with Goldberg's affidavit, supplies not just "some" but ample evidence that Kraller and Pollenz engaged in deception, and that Kraller did not know or want to know if he had Shafer's permission. Under <u>Hardeman</u>, there is "some evidence." Indeed, Kraller himself admits he "should have" asked Shafer for it!

Schafer's affidavit does not require any new look at the evidence. It is odd, perhaps, that Shafer would file an affidavit now, but not at Kraller's hearing. Regardless, his affidavit is like Goldberg's, which the Board did consider. Schafer says that he authorized Goldberg to use the password, but says nothing about authorizing Kraller himself.

Furthermore, Schafer's affidavit does not deny that Schafer went to the APA to complain that someone (it turned out to be Kraller) was using his password to download massive amounts of membership data. Schafer can hardly deny this. If Schafer had not raised the alarm, the APA would never have investigated, and Kraller never would have been caught. What Bury reported Schafer saying, Schafer does not dispute.

A final point: <u>Hardeman</u> says that the rule under which the party is disciplined need not even be written. The plaintiffs try to evade Hardeman by citing cases that seem to require the union "rule" must be clear, and specific, and at first blush these cases seem to contradict <u>Hardeman</u>. But plaintiffs are citing cases that refer to the proviso of Section 101(a)(2), the free speech clause, and not cases under Section 101(a)(5), the due process clause. In other words, these cases apply not to Count I of the amended complaint, but Count II. But this Court need not

reach these cases, or apply the proviso to Section 101(a)(2) which applies only when there is "substantial evidence" of a political reprisal. As we will show, plaintiffs have not shown "substantial" or any evidence of a political reprisal at all.

**II**

**Plaintiffs have failed to show "substantial evidence" of a political reprisal in violation of Section 101(a)(2).**

As to the free speech claim, added after the status hearing, plaintiffs claim now that the discipline was a political reprisal, so that it is unlawful, even if carried out with due process. Black v. Ryder Nationwide, Inc., 970 F.2d 1461 (6th Cir. 1992). It is clear why plaintiffs did not originally raise this claim, because the case on which they rely requires plaintiffs to show that reprisal was the "substantial" motive or reason for the action. Id. at 1469. Given that the gist of the charge was "deception" and that Kraller admitted "deception," this is a very heavy burden here.

Furthermore, there are no specific allegations here that the decision maker, the APA Appeal Board, and more specifically its members, had any political bias against these plaintiffs. As noted above, the APA Appeal Board is an independent body. It is distinct and separate from the APA Board of Directors, and that separation is deliberate. Unless plaintiffs specifically allege that the members of the APA Appeal Board had some bias against the plaintiffs, there is no evidence, much less substantial evidence, of reprisal.

The plaintiffs try to conflate Bury, the APA Board of Directors and the Appeal Board as one and the same thing. First, plaintiffs are simply wrong that the "union" or the "Board of Directors" voted to file a charge, or to approve a charge. The Board did not do so. Bury who is an officer filed the charge, but did so as an individual. Kraller and Pollenz have the same right as Bury to file a charge. Second, the APA Appeal Board was not picked for this case, but is a

permanent body, whose members are elected by the APA Board of Directors for a fixed two year term. In particular, as shown in his declaration, Gary Weller has served since 1990. That is, he has served under Boards of various "political" makeups and differing views, including officers who have disagreed with the current officers. It is insufficient to say that plaintiffs oppose Darrah, or Darrah opposes them. Under Black v. Ryder Nationwide, Inc., the plaintiffs must show that Weller and others on the Appeal Board had some political bias against them. For indeed Black v. Ryder Nationwide, Inc., says that the political reprisal must be the "proximate cause" of the injury to Kraller and Pollenz, but unless the APA Appeal Board is shown to be politically hostile to the plaintiffs, there is no showing of "proximate cause."

In other words, in Black v. Ryder Nationwide, Inc., there was no independent tribunal, and the union itself imposed the discipline, so the proximate cause issue did not arise in the same form. Here, however, plaintiffs must show in effect that the tribunal was biased. In other words, they are back to showing a Section 101(a)(5) violation, that there was no "impartial" tribunal. The courts require in such circumstances that plaintiffs must make "specific factual allegations of bias that the panelists were incapable of hearing plaintiffs' case impartially." Yager v. Carey, 910 F. Supp 704, 715(DC 1995); Frye v. United Steelworkers of America, 767 F.2d 1216, 1225 (7th Cir. 1985) cert. den. 474 US 1007.

"Courts... are justified in ruling a union tribunal biased only upon a demonstration that it has been substantially actuated by improper motives..." Parks v. IBEW, 314 F.2d 886, 913 (4th Cir. 1963) cert. den. 372 US 975.

Plaintiffs have made no specific factual allegations of bias, much less allegations that would show bias was the "substantial" motive for the discipline. To put it another way, plaintiffs have failed to show any "substantial" likelihood of success on this very high standard of proof.

Indeed, the only specific allegation about the panel is that the panel is chary of imposing discipline, and has not imposed discipline for years. In a politically charged organization like a labor union, that suggests impartiality and restraint. Notably, Weller has been elected by boards of directors with very different political views. Far from showing bias, plaintiffs' sole allegation about the tribunal as such shows the opposite. Weller has submitted his Declaration which states that the Board of Directors does not play a role in any decision of the tribunal. Indeed, one can see an example in this case, i.e., where plaintiffs complain that when they sought to reschedule with Bury so as to pursue a settlement, the panel would not be bound.

In short, the nature of a political reprisal charge against a tribunal requires a heavy burden on plaintiffs to make very specific factual allegations that will show bias was the "substantial" motive. Plaintiffs at this stage have not even begun to meet that test. Given that the tribunal was the decision maker, and not the Board of Directors or the union, plaintiffs have failed to make out a case of political reprisal.

If plaintiffs had made out such a case, then defendant would have the burden of showing that despite the substantial evidence of political reprisal, it was still justified in imposing the discipline. That is why Section 101(a)(2) provides that even when the union may have violated political expression, there is still a savings clause or justification, when the plaintiffs violated a clear and reasonable union rule. Defendant APA could meet that burden here, but that is unnecessary when the plaintiffs have failed to show that there was in fact a political reprisal by biased members of the APA Appeal Board.

### III

**Plaintiffs have failed to state a claim for breach of the union constitution.**

The third count is for breach of the union constitution under Section 301 of the LMRA,

but defendant APA has shown it does not apply to a union representing employees covered by the Railway Labor Act.  Furthermore, the claim here is that the APA Appeal Board had power only to impose suspension, expulsion or a fine, but no "lesser" penalty.  Suffice it to say, the courts do not micro manage unions in the way  that plaintiffs propose.  In this Circuit, a union has very broad discretion to interpret its powers under the union constitution, unless the interpretation is "patently unreasonable." See O'Neil v. ALPA, 939 F.2d 1199, 1206  (5th Cir. 1991); Newell v. IBEW, 789 F.2d 1186, 1189  (5th Cir. 1986).   Nowhere in any brief do even plaintiffs dare say that the implication of a lesser power is "patently unreasonable."  Indeed, it is a standard construction of law.   As stated in the Declaration of Gary Weller, the APA Appeal Board reached its own interpretation that it had the power to impose a lesser penalty and did not rely upon or even have knowledge that the Board of Directors had amended the Constitution to clarify that the APA Appeal Board could impose such a lesser power.  It is not the Board of Directors but the APA Appeal Board that in any event has the exclusive power to impose discipline.

Indeed, it is worth noting that unlike most unions, the "appeal" from the tribunal is not to the union board of directors, but to an outside arbitrator, a neutral picked by the parties from a list submitted by the American Arbitration Association.  This unusual arrangement, to keep discipline "non political," is further evidence that rebuts any claim here of retaliatory intent.

### Conclusion

For all the reasons above, plaintiffs have failed to show any "substantial" likelihood of success on the merits.  Further, a word about the claim of irreparable injury may be proper here.  The only reason that the mild discipline described here is in effect is that plaintiffs chose not to use the appeal to the outside arbitrator.  The appeal would have stayed the discipline

automatically.   The issue of a preliminary injunction would be moot for that reason as well.   In any event, for all the reasons set forth above, the "renewed" motion for preliminary injunction should be denied.

Respectfully Submitted,


THOMAS H. GEOGHEGAN
Illinois Bar No.  3126689
Despres, Schwartz & Geoghegan
77 West Washington Street, Suite 711
Chicago, Illinois 60602-2803
(312) 372-2511
(312) 372-7391 FAX


SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
Stemmons Place, Suite 1100
2777 N. Stemmons Freeway
Dallas, TX 75207
(214) 637-0750
(214) 637-0730 FAX


COUNSEL FOR DEFENDANT
ALLIED PILOTS ASSOCIATION

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served via certified mail r.r.r. on this 16th day of June , 2003 on the following:

Barbara Harvey
645 Griswold, Suite 3060
Detroit, Michigan 48226

Stephen Gardner
Law Office of Stephen Gardner, P.C.
6060 N. Central Expressway
Suite 560
Dallas, Texas 75206


Sanford R. Denison