ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JUN 2 4 2003

| | | |
|---|---|---|
| JEFFREY A. KRALLER and<br>ALAN POLLENZ, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 3 03CV--761P |
| | §<br>§ | **REPLY BRIEF IN SUPPORT OF** |
| | §<br>§ | **PLAINTIFFS' RENEWED** |
| ALLIED PILOTS ASSOCIATION,<br>a Labor Organization, | §<br>§<br>§ | **MOTION FOR**<br>**PRELIMINARY INJUNCTION**<br>**ON THE AMENDED** |
| Defendant. | §<br>§<br>§ | **COMPLAINT** |

Stephen Gardner
Texas State Bar No. 07660600
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:  (214) 800-2830
Facsimile:  (214) 800-2834

Barbara Harvey
Admitted *pro hac vice*
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone:  (313) 963-3570
Facsimile:  (313) 963-3572

Attorneys for Plaintiffs

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

## I. ARGUMENT

### A. Defendant Has Failed to Refute Plaintiffs' Free Speech Claims.

Defendant does not deny that it disciplined plaintiffs for the purpose of suppressing their recall

campaign, but raises procedural defenses. These defenses are insupportable.

*1. Disciplinary Action for Free Speech or Association Violates Section 101(a)(2) in the Absence of a Reasonable Rule, Regardless of the Union's Purpose.*

First, the APA attempts to obliterate a fundamental distinction between sections 101(a)(2) and

101(a)(5), by arguing that it needed no prior written rule to discipline members for the free speech or

associational activity of compiling a membership e mail list for use in a recall campaign. This position

is contrary to the clear language of section 101(a)(2), which allows limits on member speech *only* as

allowed by the proviso. The proviso requires a "reasonable rule." *Hardeman*'s holding that no prior

written rule was required to sustain disciplinary action against a member's physical attack against a

union official, on union property, was limited to the application of section 101(a)(5), in a case involving

no free speech  rights.  The APA's attempt to force the same rationale upon section 101(a)(2) is

unprecedented and contrary to the clear requirements of the proviso.

Under section 101(a)(2), a prior rule is a prerequisite for the imposition of discipline for the

exercise of speech or associational rights. "[T]he proviso does not protect ad hoc action." M. Malin,

INDIVIDUAL RIGHTS WITHIN THE UNION 78; see cases collected in RE #21, at  13.  If speech or

associational activity is disciplined without foundation in existing union rules, such disciplinary action

violates section 101(a)(2), without any further required showing.

If the union claims in its defense that the discipline was based on a reasonable rule, then the

inquiry shifts to whether the rule was a pretext for the suppression of dissent, an unlawful union

purpose under section 101(a)(2).  Cases that have required proof that the purpose of the disciplinary

action was to suppress dissent have involved union disciplinary action that *was* based on a pre-existing reasonable rule. In *Black v. Ryder P\*I\*E Nationwide*, the union claimed it had disciplined plaintiff for participating in picketing after the picketing had been enjoined by court order. In *Petramale v. Local No. 17, LIUNA*, 736 F.2d 13 (2d Cir. 1984), plaintiff was disciplined in part for uttering defamatory statements, which he was entitled to make under section 101(a)(2) without fear of retaliatory discipline, and in part for disruptive conduct, which was lawfully prohibited.

Proof that the union intended its disciplinary action to discourage dissent is required under section 101(a)(2) only when the Union relies on a prior reasonable rule to justify its action, or where the union's action is not "discipline" – *e.g.,* cases involving removal from union office. *Sheet Metal Workers International Association v. Lynn*, 488 U.S. 347, 353-55 (1989); *Bentivegna v. Fishman*, 2002 WL (S.D.N.Y. 2002); *Messina v. Local 1199 SEIU*, 2002 WL 243781, at 6 (S.D.N.Y. 2002) (noting that *Lynn* requires an allegation of retaliatory action in a claim of wrongful removal from union office); *McCormick v. Zero*, 110 F. Supp.2d 716 (N.D. Ill. Aug. 23, 2000), *judgment vacated as moot*, 2001 WL 219404 (7th Cir.), *attorney fees awarded,* 134 F. Supp.2d 978 (N.D. Ill. 2001).

2. *The APA Argues for a Standard of Proof Heavier Than Any Court Requires.*

The copious evidence presented by plaintiffs that the APA's purpose was to suppress dissent presents a second, independent basis for a ruling in their favor under section101(a)(2).

The APA mistakenly asserts that the "substantial evidence" standard, which the Sixth Circuit adopted in *Black v. Ryder P\*I\*E\* Nationwide*, imposes a "heavy burden," RE #24, at 14, although it has long been understood as a minimal standard of proof. "The 'substantial evidence' test ... requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable factfinder." *Allentown Mack Sales and Service, Inc. v. N.L.R.B.*, 522 U.S. 359, 377 (1998) (emphasis in original). It is a "clearly a lower standard" than the preponderance

standard. *Stankis v. E.P.A.*, 713 F.2d 1181, 1185 (5th Cir.1983). Other courts similarly articulate a low

standard of proof under LMRDA section 101(a)(2) . See RE #21, at 11.

Under any appropriate standard, plaintiffs have submitted a detailed and varied record showing

that the APA disciplined them to suppress their recall campaign and "chill" similar activity.

### B.  The APA Erroneously Asks the Court to Require a Showing of Bias by the Tribunal in the Context of a Claim Under Section 101(a)(2).

The APA erroneously claims that, to demonstrate a likelihood of success under section

101(a)(2), plaintiffs must prove that the Appeal Board was biased.  RE #24, at 13.  But whether the

Appeal Board was a biased tribunal is immaterial to the merits of a claim under section 101(a)(2).  Bias

by the tribunal was explored by the court in *Black v. Ryder P\*I\*E Nationwide* only because the tribunal

was an independent labor organization, and *plaintiff had sued the tribunal*, as well as his union.  Black's

claim against the tribunal was dismissed not because bias was a necessary element of proof in the claim

against the plaintiff's union, which had imposed the unlawful discipline, but because "[t]here appears to

be no evidence against the Joint Council other than its decision in this matter. The mere fact that the

Council rendered a decision adverse to Black is not in itself sufficient evidence to support a § 411(a)(2)

claim." 970 F.2d at 1471.

In citing *Black* as authority for requiring affirmative evidence of a biased tribunal to establish a

claim of unlawful discipline under section 101(a)(2), the APA seriously misunderstands that aspect of

*Black.*  No entity may be subjected to liability unless it has itself engaged in actionable wrongdoing.

The joint council in *Black* was not liable for its actions as the tribunal because it had engaged in no

wrongdoing.  In this case, plaintiff has not separately named the Appeal Board as a defendant, and the

analysis in *Black* of the potential liability of a separate union tribunal is inapposite.

The joint council in *Black* was an independent "labor organization" within the meaning of 29

**REPLY BRIEF - PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION, page 3**

U.S.C. § 402(j)(5), having its own officers and legal obligations to file LM reports under the LMRDA. With all due respect to Mr. Weller, the Appeal Board is not an independent entity at all, but a board created under authority of the APA's constitution, by the APA's Board of Directors, and its members are appointed by the APA's Board. APA const. art. VII.D. It is not a "labor organization." It has no legal duties that are independent of the legal duties of the APA. Its actions are the actions of the APA. By its own terms, the APA constitution defines the "neutral" level of appeal *not* as the Appeal Board proceeding, but as the next level of appeal to a "neutral arbitrator" appointed by the American Arbitration Association. *Id.* art. VII.E.

The Appeal Board had no independent authority to implement its decision on appeal, but rather sent its decision to the APA, for implementation by the APA. The APA understood that *it* was the entity empowered to implement the Appeal Board decision, and to assume full legal responsibility for doing so, when the APA informed plaintiffs by letter that the Appeal Board's disciplinary action would be delayed pending appeal, to comply with the constitution, and again on April 10, 2003, when Bury informed plaintiffs, on behalf of the APA, that the disciplinary action would be implemented effective April 15, 2003. Verified Complaint, exh. G.

To support its argument that a biased tribunal must be proven in a claim under section 101(a)(2), the APA improperly cites only due process decisions under section 101(a)(5),[1] including *Parks v. IBEW*, 314 F.2d 886, 913 (4th Cir.), *cert. denied,* 372 U.S. 975 (1963), an early decision that was later repudiated as setting an unrealistically high standard of proof for claims arising under section 101(a)(5). See *Wildberger v. American Federation of Government Employees,* 86 F.3d 1188, 1196 (D.C. Cir. 1996) (collecting cases). The APA has cited *no* authority at all under section 101(a)(2) for the

---

[1] *Frye v. United Steelworkers of America,* 767 F.2d 1216, 1224 (7th Cir.1985), *cert. denied,* 474 U.S. 1007 (1985); *Yager v. Carey,* 910 F. Supp. 704, 715 (D.D.C. 1995).

**REPLY BRIEF - PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION, page 4**

erroneous legal argument that it asks this Court to apply.

### C. Impermissible Considerations Fatally Taint the APA's Disciplinary Action.

Defendant accepts the validity of the rule that disciplinary action must be vacated if it rests in some immeasurable part on an accusation that is either later repudiated by the union or otherwise an impermissible basis for discipline. *See, e.g., Petramale v. Local No. 17 of Laborers International Union of North America,* 736 F.2d 13, 18 (2d Cir. 1984) (disciplinary action based partly on valid charges and partly on invalid charges was required to be set aside). Nor does the APA dispute that a member may be disciplined only on the basis of misconduct actually charged. *Allen v. International Alliance of Theatrical, Stage* Employees, 338 F.2d 309 (5th Cir. 1964).

Instead, the APA denies as "absurd" plaintiffs' accusation that it has repudiated any aspect of the charges. Opposition Brief, at 6. The APA's bare denials cannot stand in the face of the evidentiary record contradicting its denials. In presenting the matter to the Board on October 15, 2002, Darrah described it as a case involving "two members [who] had 'hacked into the Association's computer' and used an unauthorized pass code *to download 'thousands' of e mail addresses,* including private data." Apx. 254-55 - Wissing decl. ¶ 3 (emphasis added). The charges claimed, *inter alia,* that plaintiffs made unauthorized use of a committee chair's pass code *"to download volumes of member information well beyond the limit set by the Board."* Verified Complaint exh. B (emphasis added). The Appeal Board found that, while Captain Kraller was unaware of the numerical limitation on look-ups at first, "he discovered it when the 25 lookup limit was exceeded" and then used Captain Schafer's pass code "to bypass a system limitation and thereby gain unlimited access to member information from the APA database." Verified Complaint, Exh. F ("Discussion" and "Conclusion").

But at the Appeal Board hearing, Bury had admitted that the numerical quota on look-ups was "not written in policy anywhere," Apx. 131, and after plaintiffs sued, the APA repudiated this aspect of

**REPLY BRIEF - PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION, page 5**

the charges and the Appeal Board's decision, stating that the daily numerical limitation on look-ups "is not the rule or policy for which these two pilots were disciplined in this case." RE #6 - Opp. Brief, at 13. Plaintiffs' offense was then limited to "use of a password of a National Committee Chairman *without his knowledge or consent*," characterized as "deception and false pretenses." *Id.* 11 (emphasis added). In reply, plaintiffs showed that their use of the pass code was authorized by Jason Goldberg, the member who gave it to them, and that its holder, Glenn Schafer, had in turn authorized its use to bypass the daily numerical limit on lookups. Apx. 10 – 11 (Goldberg decl.), 31 – 32 (Schafer decl.). At the status conference, defendant again modified its response, adopting a broader position than had been taken previously in either the charges or this litigation: that plaintiffs' offense consisted merely of entering the data base under another member's pass code and employee i.d. number – with or without authorization.

In denying the undeniable, the APA only digs a deeper hole, because such denials themselves constitute evidence of an unlawful purpose. *St. Marys Honor Center v. Hicks,* 509 U.S. 502, 511 (1993). Shifting justifications over time cast doubt on credibility. *See, e.g., Thurman v. Yellow Freight System,* 90 F.3d 1160, 1167 (6th Cir. 1996), *amended on other grounds,* 97 F.3d 83 (1997); *Edwards v. United States Postal Service,* 909 F.2d 320, 324 (8th Cir. 1990); *Schmitz v. St. Regis Paper Co.,* 811 F.2d 131, 132-33 (2d Cir. 1987).

### D. Disciplinary Action for Engaging in a Settled Practice by Both Members and the Union Itself Required Fair Notice Under Section 101(a)(5).

Defendant argues that no rule was required to defend against the section 101(a)(5) claim, because plaintiffs should have known that their use of Schafer's pass code was as clearly prohibited as the irate member's fisticuffs attack against his business agent that was upheld in *Hardeman. Hardeman* did not toss out the fundamental due process requirement of fair notice. The criminal assault in

*Hardeman* was so clearly in the category of misconduct that the union was not required to provide members prior notice in the form of a written rule against fighting, independent of the existing criminal law.

Plaintiffs' conduct was not comparable to the physical attack in *Hardeman*, because plaintiffs had no reason to anticipate that their union would consider their intentional conduct (evading the numerical daily lookup limit) to be improper. See RE #21 – Plaintiffs' Brief, at 1 – 6, 8 – 9, 14. Nor was there reason for plaintiffs to assume that they should have considered their *unintentional* conduct (tapping into confidential data) to be improper, since the widespread swapping of pass codes was not restricted to at-large members, but included all members, including officials. They could and did reasonably assume that they dealt properly with their unintended accessing of confidential data by refraining from using it and promptly deleting it from their files.

Unlike the member who was lawfully disciplined in *Hardeman* for attacking and beating his union representation despite the absence of an existing rule against physical assault, the plaintiffs' conduct was no different from the longstanding and widespread practice within the Union, *including the Union's own long-term practice, which the APA has not denied.* Their discipline for conduct that was identical to the Union's and other members' and officials' over many years, without prior notice in the form of a written rule, was arbitrary and capricious. No member may reasonably be held to know that a practice long observed by the union itself violates unwritten union rules.

### E. The Court Has Subject Matter Jurisdiction of Plaintiffs' Breach of Constitution Claim.

Historically, there has been a state law cause of action for breach of contract arising from a union's violation of its constitution. *International Association of Machinists v. Gonzales*, 356 U.S. 617, 618-19 (1958); *Dunn v. Air Line Pilots Association,* 193 F.3d 1185, 1206-07 (11th Cir. 1999). In *Wooddell v. International Brotherhood of Electrical Workers, Local 71,* 502 U.S. 93, 101 (1991), the

Supreme Court recognized a federal cause of action under LMRA, section 301, 29 U.S.C. § 185, for union members to enforce their constitutions, as third party beneficiaries of such "interunion contracts." The Court's concern was to ensure uniform interpretation of a single constitutional provision affecting all members of the union, in all states, thereby avoiding the disruptive effect of disparate and conflicting state court interpretations.

The APA, as a labor organization certified to represent employees of an employer subject to the Railway Labor Act ("RLA"), is not subject to section 301, but to the RLA. For the reasons stated in *Wooddell*, nationwide unions subject to the RLA, including the APA, must also be subject to a federal cause of action for the uniform enforcement of their constitutions.

The Fifth Circuit, in a case involving the relationship between a union member and his union, which was certified under the Railway Labor Act, has recognized a cause of action for breach of the union constitution directly under the RLA, analogous to the cause of action recognized in *Wooddell* under section 301. *Coyle v. Brotherhood of Railway, Airline and S.S. Clerks*, 838 F.2d 1404 (5th Cir. 1988). Therefore, while there is no jurisdiction under section 301, jurisdiction does lie under the Railway Labor Act, and plaintiffs will move to amend their complaint to conform their pleadings to the correct jurisdictional averment, if the Court so directs.

### F. The APA Engages in Much Unsupported and Improper Factual Argument.

The APA makes factual assertions that are not supported by evidence; some are directly contrary to the evidence in the record. The APA repeatedly misstates plaintiffs' positions and evidence. Improper and prejudicial factual arguments should be stricken or, at least, disregarded. *E.g.:*

1. Captain Kraller admitted "deception." RE # 24, at 12. He made no such admission. There is no such evidence. His testimony, to the contrary, was that he checked with Goldberg to be sure that he had Schafer's authorization, and that he was assured by Goldberg that he did. His *mea culpa* was his

**REPLY BRIEF - PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION, page 8**

honest response to Bury's *false* assertion that Schafer had not authorized his use.

2. Plaintiffs are merely barred from an area of the web site that "only ten percent or fewer of the APA membership ever use." RE #24, at 7. No evidence supports the claim. Plaintiffs have suffered and continue to suffer significant losses, including potential economic losses. Apx. 255-56.

3. Plaintiffs are able to vote. RE #24, at 6. No evidence supports the claim. Plaintiffs cannot participate in the internet-based membership votes.

4. Plaintiffs "possess the membership list." RE #24, at 6. No evidence supports the claim. It is contrary to the evidence in the record. Apx. 59, 60, 70-72.

5. The Appeal Board did "not communicate with, and allowed no input from the Board." RE #24, at 8. But Weller testified to his own personal knowledge that the Board neither authorized nor voted to file the charges. In fact, Weller had no personal knowledge of the Board's deliberations, and was incompetent to testify on the subject. A witness who was actually present has testified that the Board directed the filing of the charges. Apx. 254-55.

6. Bury filed the charges "as an individual." RE #24, at 12. No evidence supports the claim. It is directly contradicted by the evidence in the record, including Bury's own statements. Verified Complaint, exh. B; Apx. 255, ¶6.

7. The APA denies knowledge of *members*' entries into the Company's restricted data base under others' pass codes. RE #24, at 8. The APA *itself* was the culprit, betraying a double standard.

8. "On information and belief," Boettcher denies Goldberg's charge and claims that Goldberg himself distributed his e mail address. RE #24, at 9. The assertion is without record support. Routine e mail correspondence does not waive a member's privacy request for access to his e mail address.

9. The APA insinuates that plaintiffs participated in the "sickout," an accusation that is false and

**REPLY BRIEF - PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION, page 9**

without record support.  RE #24, at 9.

## II. CONCLUSION

Plaintiffs respectfully ask this Court to preliminarily enjoin defendant to restore the *status quo ante* by removing the bar on plaintiffs' membership right to access the members-only areas of the official web site.

Respectfully submitted,

Stephen Gardner
Texas State Bar No. 07660600
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, Texas 75206
Telephone:  (214) 800-2830
Facsimile:  (214) 800-2834

Barbara Harvey
Admitted *pro hac vice*
Penobscot Building, Suite 3060
645 Griswold Street
Detroit, Michigan 48226
Telephone:  (313) 963-3570
Facsimile:  (313) 963-3572

Attorneys for Plaintiffs
By:

_____
BARBARA HARVEY

## CERTIFICATE OF SERVICE

Barbara Harvey, one of the attorneys for plaintiffs, hereby certifies that on June 23, 2003, she served a copy of the Reply Brief in Support of Plaintiffs' Renewed Motion for Preliminary Injunction and Third Supplemental Appendix on all counsel of record, by first-class mail.

_____
BARBARA HARVEY

**REPLY BRIEF - PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION, page 10**