



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 1 2003

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

JEFFREY KRALLER and §
ALAN POLLENZ, §
 §
  Plaintiffs, §
 §
 §
v. §
 §
ALLIED PILOTS ASSOCIATION, a Labor §
Organization, §
 §
 §
  Defendant. §

CIVIL ACTION NO.
3:03-CV-0761-P

## ORDER DENYING PRELIMINARY INJUNCTION

Now before the Court are:

(1)     Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction filed

        April 14, 2003,

(2)     Defendant's Response filed April 18, 2003,

(3)     Plaintiffs' Reply filed April 22, 2003,

(4)     Defendant's Sur-Reply filed April 24, 2003,

(5)     Plaintiffs' Response to Sur-Reply filed April 25, 2003,

(6)     Plaintiffs' Renewed Motion for Preliminary Injunction filed June 6, 2003,

(7)     Defendant's Response to Renewed Motion filed June 16, 2003, and

(8)     Plaintiffs' Reply filed June 24, 2003.

After a thorough review of the evidence, the pleadings, the parties' briefs, and the applicable

law, for the reasons set forth below, the Court hereby DENIES Plaintiffs' Motion for Temporary

Restraining Order and Preliminary Injunction and DENIES Plaintiffs' Renewed Motion for Preliminary Injunction.

## BACKGROUND

Plaintiffs Jeffrey Kraller ("Kraller") and Alan Pollenz ("Pollenz") filed this Motion for Temporary Restraining Order and Preliminary Injunction and Plaintiffs' Renewed Motion for Preliminary Injunction requesting that Defendant Allied Pilots Association ("APA") be enjoined from terminating Plaintiffs' access to the official union electronic website. Plaintiffs are a pilot and a captain employed by American Airlines and members of the APA. In August 2002, Plaintiffs organized a recall campaign against APA President John Darrah. Plaintiffs mounted this campaign electronically and began amassing a data base of members' email addresses to further the campaign. Plf.'s T.R.O. Motion at 2. Plaintiffs discovered that the online membership data base had been programmed to limit members' access to 25 "look ups" during a 24 hour period. Plaintiffs then solicited help from the campaign recall supporters for help amassing an email database. In response to this appeal for help, Plaintiff Kraller received a response from Jason Goldberg giving him a password that Goldberg said would give Kraller unlimited access to email addresses. Def.'s Opposition to T.R.O. at 7. Kraller thanked Goldberg for the use of the password and asked if he could give the password to Pollenz and others to use. Goldberg emailed back "disseminate as you see fit." *Id.*

When Kraller used the password, he saw that he was using APA Contract Compliance Committee Chairman Glenn Schafer's ("Schafer") password, and that if he entered the database with Schafer's password, he was no longer limited to 25 "look ups" in a 24 hour period. However,

Schafer's password also allowed access to information that members had marked "private." *Id.* Upon the realization that this password was downloading information that was marked "private," Plaintiffs contend that they promptly purged all such information from their data base, did not retain it, and never used any of it. Plf.'s T.R.O. Motion at 2.

On October 9, 2002, Schafer reported that someone had gotten his password and made 2,500 inquiries into the APA membership database. Schafer changed his password to prevent the unknown person from continuing to download. Def.'s Opposition to T.R.O. at 6. The APA investigated and found that Plaintiffs were logging in as Schafer and had downloaded the data for 2,500 members. *Id.* On October 10, 2002, Defendant blocked Plaintiffs' access to the union electronic website, but restored access at the end of the month. Plf.'s T.R.O. Motion at 2.

On November 1, 2002, Defendant charged Plaintiffs with "misappropriating money or property of the Association" and of an "act contrary to the best interests of the APA as an institution or its membership as a whole" by making unauthorized use of a committee chair's log-in password to access private information and "to download volumes of member information" beyond the limits programmed by the Association's web master. *Id.* On November 21, 2002, Defendant sent Plaintiffs notice that the charges against them would be heard on December 5, 2002. *Id.*

On December 3, 2002, Plaintiffs' hearing representative Robert Held ("Held") met with APA representative John Bury ("Bury"). Plaintiffs claim that at the meeting, the parties reached an agreement on terms to settle the internal union charges, and that they agreed to postpone the hearing until January "to allow sufficient time to agree to the language of a joint statement to be issued to the members on the resolution of the dispute, or to recognize that no agreement could be reached."

*Id.* at 3. However, Bury denied that he had entered a settlement agreement and denied that he agreed

to postpone the hearing. Def.'s Opposition to T.R.O. at 8. Plaintiffs claim that Bury called Plaintiffs

on December 4, 2002 informing them that the hearing officer Gary Weller had refused to postpone

the hearing and that it would go forth on December 5, 2002. Plf.'s T.R.O. Motion at 3. Both Pollenz

and Held were unable to attend the hearing.[1] Kraller attended the hearing, but was unprepared

because he allegedly relied on the agreement to postpone the hearing. *Id.* at 3-4.

At the hearing, Kraller testified that Plaintiffs used the password believing in good faith that

their use of it had been personally authorized. *Id.* at 4. He stated that he believed that the Goldberg

emails were enough to permit him to use and disseminate Schafer's password, and he took it on faith

that Schafer knew about it.     However, when asked whether it ever occurred to him to contact

Schafer to verify that he had permission to use his password, Kraller testified:

> Yes sir, it did. And I went to the web page, and my determination, I said, you know,
> Glen Schafer probably wants to stay at arms length on this so that, you know, if any
> of this stuff hits the fan he has plausible deniability. So I should have, and that's
> right when I could have stopped the whole incident right there. And that's my
> mistake, but that's water under the bridge at this point.

Def.'s Opposition to T.R.O. at 8.

On January 4, 2003, the Appeal Board ("Board") issued a decision finding both Plaintiffs

guilty of, (1) "misappropriating money or property of the Association by misappropriating portions

---

[1]Pollenz claims that in reliance on the agreement to postpone the hearing, he did not make
plans to attend the hearing. Plaintiffs allege that Pollenz was not able to depart from North
Carolina in time to avoid a large blizzard. However, the Appeal Board notes in its opinion that
Pollenz said he could not attend because he could not make alternate child care arrangements,
and did not mention the weather as a reason for non attendance. Furthermore, Held did not
attend because he had made other plans in reliance on the alleged agreement to postpone the
hearing.

of an APA data base containing confidential membership information that they did not have permission to access," and (2) "any act contrary to the best interests of the APA as in institution or its membership as a whole by using the password of a National Committee Chairman without his knowledge or consent to knowingly obtain APA membership date which contained confidential information not accessible to a regular APA member." Appeal Board Decision, Verified Complaint, Exhibit F. Accordingly, the Board issued its punishment of suspending Plaintiffs from all access to the APA computer system and web site for a year. Plaintiffs appealed the Board's decision, which appeal stayed the implementation of the punishment. However, Plaintiffs withdrew their appeal. Defendant then informed Plaintiffs by letter dated April 10, 2003 that the discipline would be imposed effective April 15, 2003.

Subsequently, on April 14, 2003, Plaintiffs filed this action for Temporary Restraining Order and Preliminary Injunction to enjoin Defendant from implementing the punishment.  The Court declined to grant the Temporary Restraining Order.  The Court held a status conference on May 5, 2003 in which the parties clarified their positions, and the Court noted its concerns regarding the APA punishment issued as possibly stifling free speech.   On May 6, 2003, Plaintiffs filed an Amended Complaint in which they added a claim that the discipline was a political retaliation and a pretext to suppress Plaintiffs' recall campaign.  Subsequently, Plaintiffs filed their Renewed Motion for Preliminary Injunction which included briefing on the new claim.  The Court now examines Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, as well as Plaintiffs' Renewed Motion for Preliminary Injunction.

## DISCUSSION

### I.      Standard of Review

There are four prerequisites a party must prove for a Court to issue the extraordinary relief of a preliminary injunction or temporary restraining order: 1) a substantial likelihood that the plaintiff will prevail on the merits; 2) a substantial threat that the plaintiff will suffer irreparable injury if the relief is not granted; 3) the threatened injury outweighs the threatened harm that the relief may do to the defendant; and 4) the granting of the relief will not disserve the public interest. *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). A preliminary injunction should only be granted if the movant has clearly carried the burden of persuasion on all four prerequisites, and "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### II.     Substantial Likelihood of Success on the Merits

The Court first addresses the first prerequisite: the substantial likelihood that the Plaintiffs will prevail on the merits. Plaintiffs claim: (1) that the discipline that Defendant imposed unlawfully violates their due process rights under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") section 101(a)(5), 29 U.S.C. § 101(a)(5); (2) that the discipline imposed was an attempt to stifle Plaintiffs' recall campaign in violation of their free speech rights as union members under

03-0761
Page 6

LMRDA § 101(a)(2); and (3) that Defendant breached the Association's Constitution, in violation of the Labor-Management Relations Act ("LMRA"), section 301, 29 U.S.C. § 185.

### A.     The Discipline Does Not Violate Due Process

The standard of review the District Court uses when evaluating the Board's decision and punishment is the "some evidence" standard.  In *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245-46 (1971), the United States Supreme Court articulated this standard to determine whether the evidence in the union disciplinary proceeding was sufficient to support the finding of guilt:

> Section 101 (a)(5)(C) of the LMRDA guarantees union members a "full and fair" disciplinary hearing, and the parties and the lower federal courts are in full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard of judicial review.... [A]ny lesser standard would make useless § 101(a)(5)(A)'s requirement of written, specific charges.  A stricter standard, on the other hand, would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs, and would require courts to judge the credibility of witnesses on the basis of what would be at best a cold record.

Thus, it is the Court's responsibility to examine the Board's decision and to ensure that the decision was supported by at least some evidence.

Plaintiffs argue that implicit in the requirement that Plaintiffs receive a "fair hearing" is that the union must give fair notice that the conduct for which a member is subjected to disciplinary proceedings is prohibited.  Plaintiffs claim that there was no specific rule in place that prohibited them from circumventing the union's limitation of 25 "look ups" within a 24 four hour period.  However, plaintiffs' argument is misplaced because it is apparent from the Board's decision  that the rule or policy limiting a rank and file's look ups to 25 is not the rule or policy for which Plaintiffs

were disciplined.[2] The Board found plaintiffs' conduct in using a third person's confidential password without permission to be deceptive and was disturbed that, in light of the evidence and his own admission, "Captain Kraller refuses to take responsibility for this wrongful and deceptive acts."

In determining whether or not the Board's decision was supported by some evidence, the Court examines the written decision handed down by the Board on January 4, 2003. The Board stated,

> Captain Kraller misses the point. Regardless of what information they did or did not download, they accessed the information under *false pretenses*. Regardless of whether Goldberg had Schafer's permission or not, both Kraller and Pollenz *had an obligation* to get Schafer's permission personally. No *honorable* person would use a third person's confidential password without permission. Despite Captain Kraller's denial, his conduct was *deceptive...*
>
> Captain Kraller obviously decided to participate in this "plausible deniability" scheme. Despite his characterization of his conduct as "just... a miscommunication," his testimony indicates that he *knew he was participating in a deception and possibly a double deception*. Not only did he obtain proprietary information of the APA under the *false pretense* that he was Glenn Schafer, but he also implicitly agreed with Goldberg to help maintain a cover up as to any role that Schafer might have. This use of the password was analogous to the use of a third person's ATM card and PIN without permission and with the encouragement to use it "as you see fit." That

---

[2]Throughout Plaintiffs' briefing, Plaintiffs adamantly insist that Defendant has repudiated and modified its accusations against Plaintiffs. Plaintiffs claim that by stating that the rule or policy limiting 25 look ups in a 24 hour period is not the rule or policy for which Plaintiffs were disciplined, Defendant has in some way repudiated certain charges it filed against Plaintiffs. Plaintiffs also contend that Defendant has modified its "false pretenses"charge against Plaintiffs. The court does not find that defendant repudiated or modified its charges against Plaintiffs. The initial charges against Plaintiffs stated violations of obtaining confidential membership information by using an entry code without authorization and using this deception to download more volume of information than allowed by the union Board's limits. The Appeal Board's written opinion, which the court discusses further subsequently, clearly rests on the deception prong of the charges against Plaintiffs. Whether or not Plaintiffs actions were deceptive, the Court does not have to decide. Rather, the Court's task is to determine if there was some evidence to support the Appeal Board's decision that Plaintiffs acted in such a manner as to warrant the discipline that was ultimately imposed.

> phrase from Mr. Goldberg put most of the burden on Captain Kraller and he readily accepted it, like accepting stolen goods."

Def.'s Opposition at 8 (emphasis added).

Plaintiffs claim that Defendant asserted at the hearing that the Plaintiffs' use of the committee chair's password was not personally authorized by the committee chair, and as such, that the Board's decision was based on hearsay testimony. Plf.'s T.R.O. Motion at 11. It is clear from the Board's opinion that the Board did not merely rely on hearsay testimony to support its decision, but that the Board based its decision largely on Kraller's testimony. When Kraller was asked if it ever occurred to him to contact Schafer to verify that he had permission to use his password, Kraller testified, "Yes sir, it did... So I should have, and that's right when I could have stopped the whole incident right there." The Board found Plaintiffs' actions were deceptive. The Board's decision further states, "Regardless of whether Goldberg had Schafer's permission or not, both Kraller and Pollenz had an obligation to get Schafer's permission personally." It is clear that the Board found Plaintiffs' conduct to be deceptive, and the basis for the Board's knowledge of Plaintiffs' conduct came in large part from Kraller's own testimony. Furthermore, it is clear that the Board's decision to discipline Plaintiffs was based on what the Board perceived to be the deceptive nature of Plaintiffs' actions.

Additionally, the Board found that Kraller participated in a "plausible deniability scheme." This finding was also based on Kraller's own testimony. When responding to why he did not contact Schafer personally to verify that he had permission to use the password, Kraller testified: "Glen Schafer probably wants to stay at arms length on this so that, you know, if any of this stuff hits the fan he has plausible deniability." Thus, Plaintiffs contention that the Board based its decision on hearsay testimony is not supported by the evidence. It is not the role of the court to second guess the

03-0761
Page 9

the Board's decision. Rather it is the court's responsibility to determine if there was *some* evidence

to support the Board's decision. In light of Kraller's testimony and the Board's written opinion, the

court cannot find that the Board's decision was not supported by some evidence. As such, the court

finds that Plaintiffs have not shown a substantial likelihood of success on the merits, and the court

DENIES Plaintiffs' Motion for Preliminary Injunction as to Count I.

1.   *Full and Fair Hearing*

Plaintiffs argue that they did not receive a full and fair hearing. What constitutes a full and

fair hearing in a union disciplinary proceeding must be determined from  the traditional concepts of

due process of law, the common law precepts governing the judicial control of internal union affairs,

and the sparse case law since the adoption of the LMRDA. *Falcone v. Dantinne*, 420 F.2d 1157,

1165 (3rd Cir. 1969). The common law clearly requires that, to be valid, expulsion of a member or

a subordinate body must be rendered after a "fair hearing." *Id.* The elements of such a "fair hearing"

often resemble constitutional due process requirements and generally encompass "full notice and a

reasonable opportunity to be heard – including the right to present evidence and the right to confront

and cross-examine witnesses." *Id.* Plaintiffs argue that they had the right to confront and cross

examine Schafer, the witness having personal knowledge of whether or not he had authorized

Plaintiffs' use of the password. Plaintiffs contend it was the Board's duty to call Schafer, and failure

to do so deprived them of the right to confront and cross-examine witnesses. However, Plaintiffs

could have called Schafer to testify themselves. Furthermore, Kraller testified *himself* that he had

not personally gotten Schaffer's permission to use his password. Because the Board's decision was

03-0761
Page 10

based on Kraller's own testimony coupled with the fact that the Plaintiffs could have called Schafer, the court does not find Plaintiffs were denied the right to confront and cross-examine witnesses.

2.    *Fair Notice*

Plaintiffs claim that by refusing to postpone the hearing on December 5, 2002, Defendant failed to provide Plaintiffs sufficient notice of the hearing.  On December 3, 2002, Plaintiffs' representative Held and APA representative Bury met to discuss settlement.  Plaintiffs claim that at the meeting, the parties reached an agreement on terms to settle the internal union charges, and that they agreed to postpone the hearing.  However, Bury denied that he had entered a settlement agreement and denied that he agreed to postpone the hearing.  In the Board's decision, the Board states that on December 4, 2002, Appeal Board Chairman Weller called Held and informed him that neither Held nor Bury had the authority to bind the Board to reschedule, especially on a last minute basis, and that absent a written agreement dropping all charges, the hearing would go forward.

Plaintiffs' assertion is that an agreement had been made to postpone the hearing, that Plaintiffs and their representative made alternate plans in reliance on that agreement, and that the Board's failure to reschedule deprived Plaintiffs of fair notice of the hearing.  Plaintiffs apparently take the position that where the parties have agreed to postpone a hearing, the Board is required to accept the agreement.  Plaintiffs cite no authority for this argument and are not likely to find any. A hearing had been scheduled, and the members of the Board left their duty stations to attend.  It was not unreasonable for the Board to take the position that it was not bound by an alleged agreement between the parties to continue the hearing.  Even if the parties came to an agreement, which fact is contested, the parties still had the obligation to contact the Board to determine if the Board agreed

to the postponement.  Thus, the court finds that the Board's failure to postpone the hearing did not

deprive Plaintiffs of fair notice of the hearing.

### B.      Free Speech Violation

LMRDA § 101(a)(2) broadly protects members' rights to "express any views, arguments, or

opinions" within the Union.[3]  The United States Supreme Court has determined that "Congress

modeled Title I after the Bill of Rights, and that the legislators intended § 101(a)(2) to restate a

principal First Amendment value -- the right to speak one's mind without fear of reprisal."  *United*

*Steelworkers of America v. Sadlowski*, 457 U.S. 102, 111 (1982).  The Court continued, stating that

"Congress also recognized that [free speech] is particularly critical, and deserves vigorous protection,

in the context of election campaigns. For it is in elections that members can wield their power, and

directly express their approval or disapproval of the union leadership." *Id.* at 112.

To determine the standard of review the Court should use in deciding if Defendant's imposed

discipline was a pretext to stifle free speech, the Court does not use the "some evidence" standard

as utilized in the context of 101(a)(5).  The Court in *Black v. Ryder/P.I.E. Nationwide,* 970 F.2d

1461, 1468 (6th Cir. 1992) stated that "While the 'some evidence' standard applies when reviewing

---

[3]Title 29 U.S.C. § 411(1)(2) states:

> *Freedom of speech and assembly.* Every member of any labor organization
> shall have the right to meet and assemble freely with other members; and to
> express any views, arguments, or opinions; and to express at meetings of the
> labor organization his views, upon candidates in an election of the labor
> organization or upon any business properly before the meeting, subject to the
> organization's established and reasonable rules pertaining to the conduct of
> meetings: Provided, That nothing herein shall be construed to impair the right
> of a labor organization to adopt and enforce reasonable rules as to the
> responsibility of every member toward the organization as an institution and
> to his refraining from conduct that would interfere with its performance of its
> legal or contractual obligations.

a union's decision for procedural sufficiency, this deferential standard cannot apply to cases concerning the free speech guarantees of the LMRDA if those protections are to mean anything." The proper standard to apply is the "substantial evidence" standard: Plaintiffs must prove that their exercise of protected free speech played a substantial role in the actions taken against them. *Id.* at 1469-1470. The "substantial evidence" test requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree that could satisfy a reasonable factfinder. *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 377 (1998).

In arguing that their free speech rights were violated, Plaintiffs urge the Court to look to the actions of the union as a whole and not just the actions of the Appeal Board. The Court declines to do so. Plaintiffs do not dispute defendant's assertions that the APA Appeal Board is a body of three persons elected for two year terms by the APA Board of Directors or that the Appeal Board is independent of the APA Board of Directors. In *Black*, the Court made a separate inquiry into the allegations brought against the labor union for violating plaintiff's free speech rights by bringing charges, and against the Joint Council for finding plaintiff guilty of the charges and punishing him. *Black*, 970 F.2d at 1467. In reversing the jury verdict against the Joint Council because it was not supported by sufficient evidence, the Court noted that there were no allegations that the Joint Council's decision was biased or that its decision violated due process guarantees of the LMRDA. *Id.* at 1471. Hence, in order to prevail on their claim that the decision of the Appeal Board was a pretext to stifle plaintiffs' free speech rights, plaintiffs must show that the Board was biased or was simply acting as a tool of the union. Plaintiffs have not presented evidence of either.

Plaintiffs attempt to establish that the Appeal Board's action was a pretext for stifling free speech by arguing that the Appeal Board has not taken disciplinary action against members in approximately a decade, that plaintiffs were punished for violating an unwritten rule, and that the union constitution was amended to permit the Board to impose the punishment it did in order to stifle plaintiffs' political activity. Defendants respond that this is in fact the first disciplinary action imposed by the Board in recent years because no complaints were filed with respect to certain conduct plaintiffs discuss, or when complaints were filed, the cases have settled or the charges have been dismissed. The court is not persuaded by plaintiffs' evidence. Plaintiffs' do not refute defendant's assertions that no complaints were filed in many of the instances of which plaintiffs complain that no disciplinary action was taken by the Board. Further, the charges against plaintiffs were identified by the Board as including a violation of Article VII.A.7 of the union's constitution and by-laws. The charges were more specifically identified as accessing a restricted APA database by using a third person's entry code without authorization of that person. Based in large part on Kraller's own admissions the Board found the charges were true. The Board also found that plaintiffs engaged in deceptive conduct and engaged in a scheme to help cover for another person. The charges brought against plaintiffs and sustained by the Board were specific and identified the appropriate sections of the union's constitution and by-laws involved. Plaintiffs' assertions that they were punished for violations of unwritten rules is not supported by the evidence. Further, the court has found, as discussed below, that amendment of the union constitution to provide for lesser punishment did not infringe any rights of plaintiffs. Finally, the court is not persuaded by plaintiffs argument that their free speech rights were violated by the punishment imposed by the Board. As

defendants note, plaintiffs were still free to send e-mails through their own computers and other types of correspondence to other pilots expressing their political views on the union leadership. Plaintiffs were not prevented from having contact with other pilots or engaging in other types of political activity. Thus, the Court declines to find that the Appeal Board's issued the discipline it did as a pretext to stifle Plaintiffs' free speech. Accordingly, because Plaintiffs have not shown likelihood of success on the merits, the Court DENIES Plaintiffs' Motion for Preliminary Injunction on Count II.

### C.   Breach of Union Constitution

Plaintiffs claim that the Association's Constitution constitutes a contract between the Association and its local unions, which is enforceable by Plaintiffs, as members, under LMRA § 301. Amended Verified Complaint at 11. Defendant responds that the APA is not a "labor organization" as defined by § 301, and is not subject to the LMRA, but only to the Railway Labor Act, 45 U.S.C. § 151 ("RLA"). Defendant's Fax Letter. Plaintiffs respond and clarify that the APA is not subject to § 301, but is subject to a federal cause of action for the uniform enforcement of their Constitutions. Plaintiffs state that jurisdiction does lie under the RLA, and that Plaintiffs will move to amend their Complaint to conform their pleadings to the correct jurisdictional averment. However, for the following reasons, the Court finds this is not necessary.

*1.   Discipline implemented*

Plaintiffs claim the discipline implemented violates the APA Constitution because at the time Plaintiffs engaged in the conduct for which they were disciplined and at the time Plaintiffs were charged with misconduct, the Constitution authorized three forms of disciplinary actions: fines,

suspension, and expulsion.  The Constitution was amended November 7, 2002 expanding the

disciplinary section to include "disciplinary action, including but not limited to fine, suspension, or

expulsion."  The Constitution was thus amended to allow the Board to impose a lesser punishment

than fine, suspension, or expulsion.  Plaintiffs argue that by imposing punishment authorized by the

amendment, which was implemented after Plaintiffs' conduct, but before the hearing or before the

Board's decision, the Board has exceeded its constitutional authority.  The Court finds no merit in

Plaintiffs' argument.  The Board did not act improperly in imposing a punishment in accordance with

the amended Constitution.  The Constitution was amended before the hearing and before the Board's

decision.  This does not appear to be a case where a more harsh punishment was assessed than what

was previously allowed.  It cannot be seriously argued that suspension from access to the APA

computer system and web site for twelve months is a more harsh discipline than suspension or

expulsion from the union.  The latter two forms of discipline would have affected all of plaintiffs'

rights to participate in union activities, not simply access to the union's website.  Further, depending

on the amount of the fine assessed, a fine could certainly work much more of a hardship on an

individual than the discipline imposed by the Board.  The court does not find that plaintiffs' rights

were violated because the Board imposed a punishment in accordance with the amended

constitution.

2.    *Right to Appeal*

The APA provides for the right of appeal to a neutral outside arbitrator, with fees and

expenses to be borne by the APA.  Plaintiffs contend that Defendant denied Plaintiffs their right

appeal.  On January 14, 2003, Plaintiffs' counsel requested arbitration for Plaintiffs, but by letter

dated February 19, 2003, Plaintiffs counsel withdrew the application for arbitration. Thus, because it was Plaintiffs who withdrew the arbitration application, the Court finds that Plaintiffs were not denied their right to appeal.

Furthermore, Defendant argues that Plaintiffs violated Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4) and the APA Constitution because they failed to exhaust or even use their internal union remedies. Article VII of the APA Constitution states that "the accused or the accuser shall *have the right* to appeal the decision of the Appeal Board to a neutral arbitrator." Appendix to Verified Complaint (emphasis added). The Constitution does not say that the accused or accuser *must* appeal the decision to an arbitrator. It is clearly discretionary whether or not a union member decides to utilize the internal union remedy of arbitration. Thus, the Court declines to find that Plaintiffs failed to exhaust their administrative remedies. Accordingly, because the Plaintiffs cannot show a substantial likelihood of success on the merits, the Court DENIES Plaintiffs' Motion for Preliminary Injunction as to Count III.

Thus, in light of the Court's findings articulated above, the Court finds that Plaintiffs have not shown a  substantial likelihood of success on the merits on Count I, II or III. Because a preliminary injunction should only be granted if Plaintiffs carry the burden on all four prerequisites for a preliminary injunction, and the Court finds that Plaintiffs failed to meet the first prerequisite of showing a substantial likelihood of success on the merits on all Counts, the Court declines to rule on the remaining three factors.

## CONCLUSION

03-0761
Page 17

After a thorough review of the evidence, the pleadings, the parties' briefs, and the applicable law, for the reasons set forth above, the Court hereby DENIES Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and DENIES Plaintiffs' Renewed Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

Signed this _11th_ day of _September_, 2003.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE